## KAANAPU SYLVA AND HANNAH JACKSON *v.* WAILUKU SUGAR CO.

### ERROR TO CIRCUIT COURT, SECOND CIRCUIT.

ARGUED OCTOBER 7, 1909.        DECIDED NOVEMBER 6, 1909.

### HARTWELL, C.J., WILDER AND PERRY, JJ.

TRIAL—*motion to direct verdict.*

> Where the evidence is conflicting a motion to direct a verdict should be denied.

TRIAL—*instructions.*

> In an action of trespass to land various instructions, referred to in the opinion, examined and, although found erroneous in part, held, for the reasons stated, not to require a new trial.

#### OPINION OF THE COURT BY WILDER, J.

#### (Perry, J., dissenting.)

This is an action of trespass upon a piece of land at Waikapu, Maui, being substantially one-half of apana 1 of R. P. 2353 L. C. A. 492 to Kepaa. The original awardee died tes-

tate in 1870 leaving to his wife Kaaua one-half of this land, "the same being the one-half where the wooden house stands." The evidence shows that the wooden house then stood in that part of the apana where the alleged trespass took place. The remaining one-half of Loaloa, the name of the land, was devised to Kaauwai and Kaukoula. Thomas Martin heir of Kaaua, the widow, conveyed to E. P. Adams on July 6, 1872, who on December 14, 1874, deeded to Henry Cornwell by metes and bounds a portion of Loaloa which the evidence shows included that part of the kuleana on which the alleged trespass took place. On June 14, 1875, Kaauwai in consideration of "a piece of land given me this day by Henry Cornwell" deeded to him a little more than one-half of the kuleana which appears from the evidence to have been the lots marked on the map as "Y" and "W," to which part plaintiffs make no claim. On the same day Cornwell "in consideration of the two pieces of land which Kaauwai has given to me" conveyed to Kaauwai that part of the land which is in dispute in this action. Cornwell recorded his deed and Kaauwai failed to record his. Some where near the date of these two deeds Cornwell built a fence across the land substantially dividing it in half. That part of the land which had been deeded to Cornwell by Adams, which included the part that Cornwell conveyed to Kaauwai by the unrecorded deed, was in 1877 and 1879 conveyed by Cornwell to others, the defendant finally getting a deed of it in 1894. After Cornwell built the fence referred to neither he nor any of the subsequent grantees under his deeds of 1877 and 1879 ever had any actual possession of that part of the land in dispute until the defendant in 1908 went on it and plowed it and planted it in cane. The evidence does not show that any grantee subsequent to Cornwell under his deeds of 1877 and 1879 had any actual notice of the unrecorded deed referred to. Plaintiffs claim through Kaauwai and the defendant through Cornwell.

The jury returned a verdict for plaintiffs for $750, which amount was reduced by the court on defendant's motion for a new trial to $500 as an alternative to granting the motion. Both parties claim paper title to the land and the plaintiffs also claim by prescription. During the trial plaintiffs admitted that they had no title or claim to that part of the apana lying below or makai of the Cornwell fence, already referred to, leaving in dispute the part above or mauka of the fence. Defendant disclaimed any title or right of possession to substantially one-half of the mauka or upper part of the land, being that part which adjoins the road. Defendant brings error.

The first assignment of error we will consider will be the denial at the close of the case of defendant's motion for a directed verdict, in discussing which we will assume that defendant proved it had a paper title to the land in dispute. The motion was based upon the following grounds:

"1st: That it does not appear that plaintiffs are the owners of the property described in the complaint or any part thereof.

"2nd: That it has not been shown that Kaauwai through whom the plaintiffs claim ownership as set forth in the complaint died ceased (seized) of any part or portion of the premises set forth and described in the complaint.

"3rd: It has not been shown by any evidence that Ulunui the widow of Kaauwai inherited or obtained in any other way title to any part or portion of the land described in the plaintiffs' complaint.

"4th: It does not appear that plaintiffs were at the time of the alleged trespass in possession of the premises upon which it is alleged that trespass was committed.

"5th: It does not appear that plaintiffs were the owners of any part or portion of the property alleged to have been damaged or trespassed upon."

If there was evidence tending to show that plaintiffs had acquired title to this land by prescription then the motion was properly denied irrespective of its other grounds. After an

examination of all of the testimony we have no hesitation in declaring that there was ample evidence from which the jury could find that the plaintiffs had acquired by adverse possession that part of the land upon which the alleged trespass took place. Without setting it out in detail it was to the effect that all of the land mauka of the Cornwell fence and including the part upon which the alleged trespass took place had been in the actual possession of plaintiffs and others under whom they claimed for much longer than the statutory period, that all of it was fenced in as one lot, having the "Cornwell fence" on the makai side, a stone wall along the road, a fence along the Kaina land and a fence and wall along the mauka boundary, that parts of it had been actually cultivated by them, parts of it used for pasturage and parts for the interment of their relatives, that they had paid taxes upon the whole of it, and that all this was done under a claim of right. It further appeared that defendant took a ten-year lease in 1898 from one of the plaintiffs of his undivided interest in the land and that it caused to be paid its lessor's taxes thereon. As the defendant introduced evidence conflicting with that put on by the plaintiffs the matter was properly left to the jury.

The next assignments of error relate to the instructions given, refused and modified. Defendant contends that the trial court erred in giving plaintiffs' requested instructions 13, 14 and 15 which are as follows:

No. 13. "Section 1988 of the Revised Laws of Hawaii is as follows: 'No person shall commence an action to recover possession of any lands, or make any entry thereon, unless within ten years after the right to bring such action, first accrued.'

"Section 1989 of the Revised Laws of Hawaii is as follows: 'If such right first accrued to any ancestor or predecessor of the person bringing such action, or making such entry, or to any person from, by or under whom he claims, the said ten years shall be computed from the time when the right first accrued to such ancestor, predecessor or other person.'

"I charge you under these statutes as matter of law, that if you find from the evidence in this case that the plaintiffs in this action were in the possession of the lands mentioned in the complaint in this action, or any of said lands, for a period of ten years or more, having said land so possessed by them under fence, living upon same, and cultivating the same, that in law the plaintiffs are the owners of said land, and any entry upon such lands so possessed by the plaintiffs for ten years or more next preceding such entry, if such entry was made, by the defendant, was wrongful and unlawful, although made under a claim of title."

No. 14. "If you find from the evidence in this case that the plaintiffs were in the adverse possession of the lands described in the complaint, or any part of said lands, and had been in such possession for ten years continuously and uninterruptedly next preceding the entry of the defendant upon such land so possessed by the plaintiffs, if the defendant entered thereon, then as matter of law the Court instructs you that such entry was unlawful and you must find for the plaintiffs."

No. 15. "The Court instructs you that living upon land under claim of title, cultivating same or parts thereof constitute adverse possession as against another claimant knowing or having reasonable means of knowing of such acts, and when continued for a period of ten years or more constitute title by prescription in the party so occupying such premises as against the world. Payment of taxes coupled with actual possession such as is above stated is notice of claim of title and if continued for ten years gives title by prescription in the party having such possession and paying such taxes."

The error claimed is that by referring in each instruction to the possession of the lands mentioned in the complaint or any of said lands the jury was at liberty to find for the plaintiffs from evidence of actual possession only of the part as to which defendant disclaimed title although mentioned in the complaint. It seemed to be clearly understood during the trial, however, just how much of the land was in dispute and as to what part the evidence of adverse possession related. Consequently we fail to see how defendant was prejudiced by these

instructions in that regard, although to be sure they might have been more appropriately worded. But in this connection defendant requested an instruction (No. 2) which was given and in which we find the following language: "The Court further instructs you that you must be convinced to your satisfaction by a preponderance of the evidence that the plaintiffs in this cause were in the actual peaceable possession of the premises set forth and described in their complaint," etc. At the request of defendant the jury was also instructed as follows:

"In order that plaintiffs may be considered to have been in possession of the property deeded by Cornwell to Kaauwai under color of title, it is necessary that it should be shown by a preponderance of the evidence that plaintiffs were actually in possession of some part or portion of the premises set forth and described in said deed at the time the alleged trespass took place."

It is further contended that plaintiffs' instruction No. 15 was erroneous in its reference to the payment of the taxes. While the payment of taxes in some cases may be of slight significance, still no harm was done defendant in this instance when the jury was instructed that the payment of taxes had to be "coupled with actual possession such as is above stated."

It is earnestly contended that the giving of plaintiffs' requested instruction 18 was erroneous. That instruction reads as follows:

"If you find from the evidence in this case that the defendant entered upon the lands in dispute as shown by the evidence or any portion of them under a claim of title, or deed, that such entry was, in law, wrongful unless such entry was made within the period of ten years from the date the title or right to such land was first vested in the party making such entry, the defendant, and within ten years from the time the right to such land accrued to the predecessor or predecessors, if any, under whom such right is claimed by the defendant."

The argument is that under the most favorable view the jury might have taken of the evidence, the plaintiffs would only be

tenants in common with defendant, and that as no ouster of defendant was shown this instruction was a most serious error. If, however, as already pointed out, the jury found from the evidence, as they could, that plaintiffs had title to and right of possession of the land upon which the alleged trespass took place by prescription, which did not rest on their claim under the unrecorded deed, that eliminated any possibility of defendant being a tenant in common. Conceding, however, that the instruction was erroneous in not clearly stating that the statutory period begins to run from the time the right to bring an action for the land first accrued, such an instruction was substantially cured by other instructions given on the subject, as, for instance, if plaintiffs "and their predecessors have been in adverse possession openly for a period of more than ten years prior to the time when it is alleged the trespass complained of took place;" and "if you find * * · * that the plaintiffs were in adverse possession of the lands * * * and had been in such possession for ten years continuously and uninterruptedly next preceding the entry of the defendant."

The objection to the giving of plaintiffs' requested instructions 7, 8, 9, 10 and 11 is also based on the claim that defendant at least is a tenant in common with plaintiffs, the previous rulings as to which would dispose of such claim. Defendant made no objection to the court instructing the jury that "I instruct you that a person in the actual and peaceable possession of land will be presumed to be the owner even in the absence of any proof of title and he may recover damages for trespass against any one who wrongfully invades his possession." That precludes it from claiming that other instructions along the same line are erroneous. Furthermore, the jury was instructed, without objection by defendant, as follows: "I instruct you that the term 'trespass' as used in this case means any transgression or offense against the law relating to the property of the plaintiffs whereby they are injuriously treated or damaged.

Sylva v. Wailuku Sugar Co., 19 Haw. 602.

"And I further instruct you that if you find from the evidence that the defendant, by its agent or servants, has without right entered upon the lands of the plaintiffs, plowed up these lands or any part thereof, cut down trees, destroyed growing crops, plowed up or otherwise desecrated burial places on the land, it is guilty of trespass and your verdict must be for the plaintiffs."

It is also claimed that the reference in plaintiffs' instruction 7 to the forcible ejection of plaintiffs was erroneous. If this was an error it was harmless in view of the evidence that the acts committed by defendant were done in spite of the protest of plaintiffs and over their objection. It is also claimed that instruction 9 was erroneous because the meaning of the word "unlawfully" therein used was not explained. Counsel for defendant could have requested, however, as he did not, that the meaning of the word be explained to the jury. Consequently there was no error in the court's failure to do so. *Express Co.* v. *Kountze Brothers,* 8 Wall. 342, 353; 2 Thompson on Trials, Sec. 2341 and cases cited. It is further argued that instruction 10, in regard to the desecration of burial places, was erroneous in that it was a direction to find for plaintiffs if they had peaceable possession of them. The undisputed evidence showed that these graves were situated some distance within the outer boundaries of the land in dispute and in order to desecrate them a trespass would first have to be committed, or if no trespass was first committed then there could have been no desecration within the meaning of the instruction. Further than this, however, the instruction itself shows that it had reference to the matter of punitive damages, that is, that if the jury found for the plaintiffs from the evidence and under the law as given by the court then this desecration of graves, if also so found, might be considered in awarding damages.

The next instruction claimed by defendant to be erroneous is plaintiffs' instruction 17 which reads as follows:

"'The Court instructs you as matter of law that where one person, or more than one who claim to own jointly, live upon a tract or piece of land which has definite boundaries, viz: the boundaries of which are marked by fences, or by stone or posts or other objects which show the extent and boundaries of such land that possession of the part of same draws to it the possession of the whole, and the person or persons so living upon such tract or piece of land are, in law, in possession of the whole thereof."

This is objected to because it is argued that under it the jury could find from evidence of possession for the prescriptive period by plaintiffs of that part of the land to which it was admitted they had title that plaintiffs had actual possession also of that part of the land where the alleged trespass took place. But as the jury was instructed as to the actual possession of the latter part of the land we think the error, if any, was harmless.

Defendant further urges that there was error in the trial court's refusing to give its requested instructions 1, 3, 13 and 14 as originally requested and in modifying them and giving them as modified. Defendant pointing out no error in regard to these instructions, we shall not seek for any.

It is next claimed there was error in refusing to give defendant's instruction No. 4 which reads as follows:

"The evidence shows that plaintiffs and defendant claim from a common source of title, to wit: Henry Cornwell. The plaintiffs under an unrecorded deed dated the 14 day of June, 1875, neither actual nor constructive notice of which is shown to have been given to defendant, and the defendant under a later deed from the same party covering the same premises, which conveyance as well as all preceding conveyances under which defendant claims title are duly recorded as required by law."

This instruction was given with the following modification:

"You are also instructed that possession of the premises is notice of the rights of the person in possession and is as truly notice as would be a recorded deed."

Sylva v. Wailuku Sugar Co., 19 Haw. 602.

It is also urged that it was error to give the instruction with the modification. In our opinion, however, the modification was proper.

Defendant requested an instruction (5) reading as follows:

"You are instructed that under Section 2380 of the Revised Laws of Hawaii an unrecorded deed of real property is void 'as against any such subsequent purchaser in good faith and for a valuable consideration, not having actual notice of such conveyance, of the same real estate or any portion thereof.' "

This was given with the following modification:

"But if the person holding the unrecorded deed is in the actual open possession of the land that then all persons have notice of the rights of the person in possession under the deed although it is unrecorded."

The claim is that this modification was misleading and erroneous and prejudicial to defendant, which claim we hold to be without merit in view of the failure to point out wherein it was so.

The court refused to give defendant's instruction 6 reading as follows:

"You are instructed that when a person has neither title nor color of title, to an enclosed tract of land, the fact that he during several years has used said land and things growing thereon from time to time, does not show actual possession. Such acts if isolated and only occasional may as properly be referred to continuous acts of trespass as indicating possession.

"To constitute possession such acts should be exclusive and under claim of title."

No error being pointed out in regard to this instruction we shall seek for none.

Error is also claimed in refusing to give defendant's instruction 7 reading as follows:

"The Court instructs you that if you are satisfied from the evidence that at the time of the transfer of that portion of the premises in the complaint described within which is contained the burial lot referred to in said complaint to the de-

fendant, said portion of said premises in said complaint described were not in the actual possession of the plaintiffs or their predecessors in title or estate, but were uncultivated and without buildings thereon, then and in that case defendant's deed to said premises being of record and plaintiffs' deed not being of record and plaintiffs not being in the actual possession of said property, any deed of conveyance held by said plaintiffs is void and of no effect as against the defendant, unless it is shown that defendant had actual knowledge of the existence of such prior unrecorded deed."

This was given as modified by the following language:

"You must consider the nature and use of the ground in order to judge who was in possession of it and cultivation might not be expected of burial places where it would be of other arable land, and that to use land for burial places is to be in possession of it if it be a part of premises of persons or family so using it."

In view of the evidence we fail to see that the modification prejudiced defendant.

It is next claimed that there was error in refusing to give defendant's instruction 9, which the court gave with the addition of the underlined words, as follows:

"You are instructed that even should you find from the evidence that the plaintiffs were the owners and entitled to the possession *and in actual possession* of the premises in said complaint described but that defendant relying upon its paper title thereto which covered the same property, made entry thereon in good faith under a valid claim of right without wantonness and violence, and in so doing, did actually injure certain property belonging to the plaintiffs, the measure of damages should be only the actual value of the property destroyed or used by the defendant, *and the damage to the premises. But in order to have acted in good faith in such case, the defendant must have had no knowledge or notice that the plaintiffs were in possession under claim of ownership.*"

It is admitted that there was no error if title had been acquired by plaintiffs by adverse possession, the previous rulings in connection with which dispose of this contention.

Defendant's requested instruction 11 was as follows:

"The jury are instructed that if they should find that defendant trespassed upon the lands of plaintiffs in the assertion of a supposed right, and without wrong intention, and without such recklessness as to show malice or conscious disregard for the rights of others, then you would not be justified in giving punitive or exemplary damages; to authorize exemplary damages, the jury must find that the defendant trespassed upon the land of plaintiffs, and that they were damaged thereby, and further that the trespass was done wantonly, wilfully, maliciously or with intent to injure plaintiffs' property or deprive them of its use; if the trespass was without wrong intention, but in the belief that they had a right to go upon the lands *with their sheep* and that the acts were done without malice or wilful intention to injure the plaintiffs, then the jury should assess only such damage as you shall find from the evidence to have been actually sustained prior to the bringing of the suit; that exemplary damages cannot be given except in *extreme* cases where the malicious intention *to wilfully* injure has been *clearly* shown; and unless the same has been proven to the satisfaction of the jury, by *a preponderance of* the evidence, no sum whatever as punitive, vindictive or exemplary damages can be awarded. The jury are further instructed that the plaintiffs are not entitled to any damage either as compensation or otherwise for any trespass other than that alleged in the petition, nor for any trespass occurring since the commencement of the action."

This instruction the court gave with the exception of the underscored words. Defendant contends that the striking out of the words referred to resulted in vitally changing the effect of the instruction upon the minds of the jury. With this contention we do not agree.

It is urged that instructions b, c and d given by the court of its own motion were erroneous. Instruction b deals with the duties of jurymen. The objection is that the language used was too broad. We find no merit in this objection. A part of instruction c refers to adverse possession, which it is argued was erroneous. In view of other instructions on the subject,

however, given both at the request of plaintiffs and defendant, we think the error, if any, was harmless. The record does not disclose any instruction d, and in any event no error is pointed out in connection with it.

Error is claimed in the court's refusing to give defendant's instruction 11a and in giving additional instructions after the jury had retired, but no error is pointed out in connection therewith and consequently we do not consider the matter.

The other alleged errors are involved in the foregoing.

Judgment affirmed.

*R. P. Quarles* (*Atkinson & Quarles* on the brief) for plaintiffs.

*S. M. Ballou* (*Kinney, Ballou, Prosser & Anderson* and *W. B. Lymer* on the brief) for defendant.

### DISSENTING OPINION OF PERRY, J.

At the request of the plaintiffs and against the defendant's objection the following instructions were given:

No. 7. "I instruct you that a person in the actual, peaceable possession of premises is presumed to be there rightfully; and no one has a right to go upon the premises and commit acts of trespass thereon by forcibly ejecting such person, so in possession, or removing his property therefrom, against his will, unless the person so entering has some legal process from a Court of competent jurisdiction authorizing him so to do.

"And I further instruct you that the defendant in this case has no such legal process, and if you find therefore that acts of trespass were committed by the defendant on the property of the plaintiffs, your verdict must be for the plaintiffs.

No. 8. "I instruct you that if you believe from the evidence that the plaintiffs in this case were in actual and peaceable possession of the lands in question or any part thereof; and that the defendant committed acts of trespass thereon as defined in these instructions, your verdict must be for the plaintiffs.

No. 9. "I instruct you that in order to maintain an action for trespass, it is only necessary for the plaintiffs to prove that they were in the actual and peaceable possession of the property

upon which the trespass is alleged to have been committed; and that the defendant unlawfully interfered with such possession.

No. 10. "I instruct you that a person has no right to desecrate the burial places of the dead, when those burial places are in the actual and peaceable possession of another; and if you find from the evidence that the defendant desecrated such burial places on the lands in the possession of the plaintiffs, you are at liberty to award the plaintiffs exemplary or punitive damages.

"Provided it appears also that plaintiffs held, considered and regarded such burial places as sacred and kept and preserved them on lands in their possession as such burial places.

No. 11. "I charge you as a matter of law that it would be no good and sufficient excuse for acts of trespass committed by the defendant on the property in possession of the plaintiffs, that the defendant may have thought that the lands in question belonged to it, the defendant. If the plaintiffs were wrongfully in possession of the lands, and the defendant was entitled to such possession, the law provides a way for the defendant to obtain possession, but the law does not allow the defendant to enter upon the lands of the plaintiffs and commit acts of trespass thereon merely because the defendant thought it had a right so to do.

"But if defendant did thus trespass believing that it had a right to thus take possession of said lands, its acts were not done with an evil intent, and this would mitigate the measure of damages.

No. 18. "If you find from the evidence in this case that the defendant entered upon the lands in question dispute as shown by the evidence, or any portion of them under a claim of title, or deed, that such entry was, in law, wrongful unless such entry was made within the period of ten years from the date the title or right to such land was first vested in the party making such entry, the defendant, and within ten years from the time the right to such land accrued to the predecessor or predecessors, if any, under whom such right is claimed by the defendant, the giving of these instructions is assigned as error."

These instructions were apparently given on the theory that if plaintiffs were in peaceable possession at the time that defendant entered and ejected them, the defendant is liable,

irrespective of whether it had title or not, and that to make such an entry lawful the true owner must be armed with judicial process. Such is not the law. It is true that in trespass the title need not be tried; but it may be. A showing of peaceable possession on the part of the plaintiff is prima facie sufficient to entitle him to recover against a mere intruder. The party sued may, however, defend either by denying the acts of entry or dispossession or, admitting these, by justifying them by showing that they were rightfully done. The law, of course, does not encourage the commission of a breach of the peace. None is shown to have been committed in this instance. But the true owner of land cannot be held liable in damages for taking possession of that which is his own and which is in the wrongful though peaceable possession of another.

It may be that the use in Nos. 7, 8 and 11 of the word "trespass," defined as it was in No. 4, renders the instructions technically correct, but it could only appear so, even to a mind trained in the law, after careful re-reading and study. A jury of laymen would understand it, and not unreasonably, as an instruction to find for plaintiffs if they found the facts of peaceable possession in plaintiffs and forcible ejectment or removal of property by defendant unarmed with judicial process. The same is true of the use of the word "unlawfully" in No. 9. Upon being told, in No. 11, that "if the plaintiffs were wrongfully in possession of the lands and the defendant was entitled to such possession, the law provides a way for the defendant to obtain possession," what could the jury infer but that a mere entry was not that way and that to save itself from liability for damages the defendant, although the true owner, should have first instituted judicial proceedings? No. 10 has not even the merit, such as it is, of using the technical words "trespass" or "unlawful." It is unmistakably a direction to find for plaintiffs if they had peaceable possession and if thereupon defendant, although the true owner, made an entry. The evi-

dence was practically undisputed that plaintiffs were in peaceable possession immediately prior to the entry by defendant and that defendant had procured no judicial process for its protection. Under the instructions given, the plaintiffs' counsel had the right to argue to the jury that upon this state of the evidence and under the instructions there was but one course to follow, and that to find a verdict for plaintiffs. That I am not mistaken as to the meaning of these instructions as understood and intended by the presiding judge and counsel at the trial is further indicated by the fact that plaintiffs' attorney actually contends in this court, in justification of the instructions, that the law is that a true owner may not without rendering himself liable for damages enter upon his land in the peaceable but wrongful possession of another unless armed with judicial process. Nor is there anything in the remainder of the charge to cure these errors. They cannot be said to have been harmless, but may well have been responsible for the verdict rendered.

Instructions were, indeed, given defining to some extent adverse possession and directing the jury to find for the plaintiffs if it found that plaintiffs had acquired title by adverse possession and similarly if it found that the defendant had no title. These, however, merely presented other phases of the matter in the alternative. The charge as a whole was the equivalent of this: (1) "If you find that plaintiffs have acquired title by adverse possession and that defendant entered, verdict for plaintiffs; (2) if you find that the defendant had no title and entered, verdict for plaintiffs; (3) if you find that plaintiffs were in peaceable possession and that defendant had title and entered, *unarmed with judicial process,* verdict for plaintiffs, or (4), in other words, if plaintiffs were in peaceable possession and defendant entered, then, whether or not defendant had title, verdict for plaintiffs, provided only you find that defendant had no judicial process authorizing the entry; a

true owner cannot recover possession of his own land without liability for damages unless he first institutes judicial proceedings for the purpose."

It is suggested that the fact that plaintiffs' request No. 6, reading, "I instruct you that the person in the actual and peaceable possession of land will be presumed to be the owner, even in the absence of any proof of title and he may recover damage for trespass against any one who wrongfully invades his possession," was given without objection on the part of defendant cures the error. I cannot take this view. That instruction is somewhat clearer in its statement that the entry must be wrongful in order to justify a verdict for plaintiff; and while far from satisfactory it may be that standing alone the giving of it would be harmless and not require a new trial. The defendant cannot, I think, be charged with having practically waived objection to Nos. 7, 8, 9, 10, 11 by failing to object to No. 6. The latter is more general and the others more specific. No. 6 standing alone might pass unnoticed by the jury and cause no harm. The others, however, make clear and reiterate and emphasize the view that unless defendant was protected by judicial process his entry was wrongful irrespective of the true state of the title.

Another suggestion made in defense of No. 10 is that since the evidence would require a finding that the graves referred to in the evidence were located some little distance within the outer or southerly boundary of the land in dispute there could be no desecration of them without the defendant having first committed a "trespass" upon the land. The weakness of that position is that the defendant may have *passed over* the intervening strip just referred to, just as it might have desecrated the burial places, without being guilty of any trespass, for upon the evidence the jury could have found that the title was in the defendant and that the plaintiffs had not acquired any either by deed or by adverse possession. The evidence was sufficient

to support, but not such as to necessarily require, a finding of adverse possession in plaintiffs.

In No. 18 the jury was instructed that defendant's entry was in law wrongful unless made within ten years "from the date the title or right to such land was first vested" in the defendant or his predecessors. This, of course, is not the law. One may take a deed of a piece of land and receive the title under the same and omit to enter into possession for twenty years thereafter, and yet not lose his title or right of entry provided only that no one else occupies the land adversely for more than ten years preceding the entry. See, for example, *Rose* v. *Smith,* 5 Haw. 377, 378, 379. What the judge should have said was that the entry was wrongful if made after an adverse holding by the plaintiffs for more than ten years preceding the entry, or, in other words, if made more than ten years after the right of action accrued. But he did not say that, and while but few words need have been changed in order to make the instruction correct the difference in meaning between the two forms is very great and the instruction as given clearly erroneous. The evidence was undisputed that the only deed under which defendant claimed was executed and delivered in 1894 and that its entry was in 1908, and the instruction, therefore, was the equivalent of a direction to find for the plaintiffs. Nothing is contained in the other instructions given which to my mind cures this error.

Whether or not other errors are disclosed by the record I need not say. In my opinion assignments Nos. 2, 3, 4, 5, 6 and 11 should be sustained, the verdict set aside and a new trial granted.