P. M. CLARK, as Administrator of the Estate of Grant Clark, Deceased, Respondent v. JOHN BARTON PAYNE, as Director General of Railroads of the United States, as Agent, Appellant.

(187 N. W. 817.)

**Evidence — fact of agency cannot be proved by alleged agent.**

1. The declarations of an alleged agent are not admissible against the alleged principal to prove the fact of agency or the extent or authority

of the alleged agent. Before the acts and statements of the alleged agent can be shown against the principal, the agency must be proved prima facie by other evidence.

**Evidence — where agency shown, agent's declarations within scope of authority are admissible; but not station agent's statement as to who was foreman of a construction crew.**

2. Where agency has been shown, the declarations of the agent, made within the scope of his authority, are admissible. But declarations of an agent relating to matters wholly outside of the scope of his authority are not admissible. For reasons stated in the opinion it is *held* that declarations made by a station agent to the effect that a certain man was the foreman of a construction crew were inadmissible,

**Railroads — unlawful obstructions near track negligence as to trespassing child.**

3. The non-performance by a railroad company of the duty imposed by §4700 C. L. 1913, (which provides that after January 1st, 1915, it shall be unlawful for any common carrier to erect or maintain on any standard gauge road or sidetrack any coal chute, stockpen, pole, mail crane, stand pipe, hog drencher, embankment of earth or natural rock, or any fixed or permanent structure or obstruction at a distance of less than eight feet from the center line of the track which such structure or obstruction adjoins), is a breach by such common carrier of its duty to the public, and, is therefore, evidence of negligence, for which it will be liable in case, as a result, of such violation of duty, personal injuries are sustained by a child about 8½ years of age.

**Railroads — contributory negligence of child on cars held for jury.**

4. Contributory negligence of an 8½ year old boy, killed while riding on a train passing an embankment near track, *held* a question for the jury.

**Negligence — proximate cause of injury essential element.**

5. To render one liable to another for damages from negligence, it must be shown that the damages proximately resulted from the negligence charged.

**Railroads — negligence as to child on cars held for jury.**

In an action for the death of an 8½ year old boy, knocked from the side of a car by an embankment, *held* that the questions of negligence and proximate cause of the injury were for the jury.

Opinion filed Feb. 17, 1922. Rehearing denied April 15, 1922.

From the judgment of the District court of Ward county, *Lowe*, J., defendant appeals.

Reversed and remanded for a new trial.

*John E. Greene* & *Palda* & *Aaker,* for appellant.

"For the violation of a statute to constitute actionable negligence the person suing must ordinarily belong to that class of persons for whose benefit the statute was passed." Indiana & Chicago Railway Co. v. Neal, 166 Ind. 458; 9 Am. & Eng. Ann. Cas. 424.

"A signal of warning to be given by a train approaching a highway crossing is not for the benefit of a trespasser or mere licensee on the railroad company's track or right of way, and that a failure to comply with the statute will not entitle the person injured to maintain an action against the railroad company for the injuries sustained." Pike v. Chicago, etc., Ry. Co., 39 Fed. 754, and a large number of cases cited on p. 429, vol. 9, Am. & Eng. Ann. Cas.; Denton v. Missouri, etc., Ry. Co., 90 Kans. 51; 133 Pac. 558, Anno. Cases 1915B, 639; 47 L. R. A. (N. S.) 820; Lepard v. Michigan Central Ry. Co., 116 Mich. 373; 130 N. W. 668.

In the case of Arkansas & Louisiana Railway Co. v. Sain, 119 S. W. 659, a ten-year-old boy stepped upon the rear platform of a passenger train to see who was in the car or if certain persons were to arrive on that train.

"If appellee (plaintiff) was a trespasser or a mere licensee then the question of his age was wholly immaterial, for in such case, as we have seen, appellant (defendant) would not be liable unless it had discovered that plaintiff was in a position of peril from which he could not extricate himself, and then failed to exercise ordinary care to avoid injuring him." Citing McEachern v. Boston M. R. Co., 150 Mass. 515, 23 N. E. 231; Vertress v. Newport News & M. R. Co. 95 Ky. 314, 25 S. W. 1; Frost v Eastern R. Co., 64 N. H. 220, 10 Am. St. Rep. 396, 9 Atl. 790.

"A railroad company is not required to anticipate the presence of and look out for a ten-year-old boy in its private yards, so as to stop him from trying to jump upon a moving engine." Vertress v. Newport News, etc., Ry. Co., supra.

"No duty is cast upon a railroad company to exercise greater vigilance to discover a two-year-old child trespasser on the tracks than would be required in the case of an adult trespasser." Palmer v. Oregon Shortline Ry. Co., Utah 466; 98 Pac. 689; 16 A. & E. Ann. Cas. 229; St. Louis S. W. R. Co. v. Davis, 110 S. W. 939; Felton v. Aubrey, 20 C. C. A. 436; Ave. & Belt R. Co. v. Robbins, 124 Ala. 113, 82 Am. St. Rep. 153; Kennare v. C. & N. W. R. Co. 114 Ill. App. 230; A. T. &

S. R. Co. v. Todd, 54 Kans. 551, 38 Pac. 804.

*McGee* & *Goss,* for respondent.

Where one is under duty to give aid, undertakes to do so, his position is changed, and he is bound to use reasonable care not to aggravate the injury instead of helping it, and this is true even where the person voluntarily assisted, was a trespasser. The leading cases, fully sustaining this proposition, are: Haug v. G. N. Ry. Co., 8 N. D. 23, 77 N. W. 97; Hepfel v. Soo Line (Minn.) 51 N. W. 1049; Cincinnati Railway Co. v. Marrs, 119 Ky. 954; 70 L. R. A. 291; De Pue v. Flateau, 100 (Minn.) 299; 111 N. W. 1; Northern Railway Co. v. State, 29 Md. 420; Dyche v. Railway Co., 79 Miss. 361; Gates v. Chesapeake Railway Co. 185 Ky. 24; Hernicke v. Meramac Quarry Co. (Mo.) 212 S. W. 345; Bessemer Co. v. Campbell, 121 Ala. 50; Troutman's Adm. v. L. & N. R. Y. Co., 179 Ky. 145; Ohio & Mississippi Railway Co. v. Early, 141 Ind. 73; Heaven v. Pender, 11 L. R. Q. B. Div. 496; Fagg v. L. & N. Ry. Co., 111 Ky. 30; 54 L. R. A. 919; 63 S. W. 580; Carey v. Davis, et al. (Iowa) 180 N. W. 889.

The case at bar is analogous and practically on all fours in principle and on facts, with the Marrs case, 70 L. R. A. 291.

When the Court said:—

"In determining this question, we are to disregard all conflicts in the evidence and construe the same most favorably to the plaintiff, and if the evidence is such that intelligent men may fairly differ in their conclusions thereon upon any of the essential facts of the case, it is our duty to reverse the judgment (non obstanti) and order a new trial." Cameron v. G. N. Ry. Co., 8 N. D. 124; 77 N. W. 1016; Vickery v. Burton, 6 N. D. 253; 69 N. W. 193; McRea v. Bank, 6 N. D. 353; Pirie v. Gillett, 2 N. D. 255; Zink v. Lahart, 16 N. D. 56; Hall v. N. P. Ry. Co. 16 N. D. 60-63; 111 N. W. 609; Ness v. G. N. Ry. Co. (N. D.) 142 N. W. 165-166.

"This state recognizes the humanitarian doctrine as a basis for damages in a strong opinion by Corliss C. J. 8 N. D. 23, 77 N. W. 97; a case analogous and in the same class with the Marrs case and the other cases heretofore cited under the same doctrine."

The case cites with approval and comments at length upon the following parallel cases: Railroad Co. v. Johnson (Ala.) 19 So. 51; Railroad Co. v. Sullivan, 81 Ky. 624; 50 Am. Rep. 186.

The latter a similar case of ˊ ˎposure to cold; and also, Railroad Co. v. Weber, 33 Kans. 543; 6 ˙ ˎc. 877; Brown v. Railroad Co., 51 Ia. 235; 1 N. W. 487.

For a recent case cloˢ ˎy parallel on facts to De Pue v. Flateau, 111 N. W. p. 1, see the Ioˑ ˎ case of Carey v. Davis, 180 N. W. 889, citing and following the M ˎˢ case. The latter case is also cited and followed: in 199 Pac. 525; 1ˁ Pac. 978; 118 S. W. 949; 172 S. W. 50-52; 199 S. W. 800; 200 S. W. 17-16; 213 S. W. 567.

"A railway company also owes a child on or near its track, the duty of using all reasonable means to avoid injuring it after becoming aware of its presence and peril. If the child is of tender years, the railroad employees have no right to presume that it will get or keep out of the way." 33 Cyc. 802; 33 Cyc. 803, ¶ 2; Dubs v. Northern Pacific Ry. Co., 42 N. D. 124; 171 N. W. 888; Hepfel v. Soo Line (Minn.) 51 N. W. 1049.

CHRISTIANSON, J. On the 26th day of July, 1919, Grant Clark, minor son of P. M. Clark, the administrator, who is plaintiff in this action, was killed while attempting to board or ride upon a moving freight train in the railroad yards of the defendant in the city of Kenmare in this state. At the time of his death, said Grant Clark was about 8½ years old. For some days prior to July 26, 1919, the employees of the defendant had been engaged in constructing a sewer from the lake front on which the railroad yards were located in a northerly direction, and under the several tracks of the Soo Railway Company in said railroad yard. In digging the trench in which to lay the sewer, the dirt was thrown up on each side of the ditch. At the point where the accident occurred there were two piles of dirt extending from the railroad tracks on each side of the trench. It is very difficult to ascertain the exact dimensions of the two piles of dirt, as all the witnesses merely gave their estimates, and the same witnesses frequently varied the estimates given. It appears, however, that the two piles were some 4½ to 5 feet in height, from 4 to 8 feet in width, and from 7 to 12 or 15 feet in length, extending as aforesaid from the railroad track on each side of the trench. There were planks laid so as to cover the trench between the two piles of dirt. About half past 3 o'clock in the afternoon of July 26, 1919, two boys, Grant Clark and Howard Tyson, being respectively 8½ and 9 years of age, passed the place where this work was going

on, watched the men work for a while, and then went down to the lake, a quarter of a mile away, where they stayed and played for some time. They returned just before 5 o'clock in the afternoon. At that time work on the sewer had ceased for the day, and all of the workmen, with the exception of one Koester, had departed. Koester had taken off his rubber boots, and was sitting on a pile of lumber, putting on his shoes. As the boys returned, a freight train, moving at a rate of speed of about five to eight miles an hour, was coming into the yards. The boys mounted the train, and stood with their feet in the stirrups on the side of a box car. As they came by where Koester was sitting, he shouted to the first boy, Howard Tyson, "Hey, boy, get off there." Howard Tyson thereupon got off within a few feet of where Koester was sitting, and Grant Clark, who was riding in a similar position on the car immediately following, also got off at about the same place. There is no question but they both landed safely. Shortly after Grant Clark again attempted to mount the train, and was at once killed by being thrown under the wheels of the train. There is some evidence tending to show that he caught hold of one of the handholds on the side of a box car, and that the moving train brought him in contact with one of the piles of dirt, which it is claimed was too near the track. In other words, there is some evidence from which the inference may reasonably be drawn that, if the piles of dirt had not been there, the injury would probably not have taken place. The action is predicated upon the following alleged grounds of negligence: (1) Failure of Koester to take proper precautions to prevent the boys from again attempting to get on the train after he had ordered them down; and (2) placing the piles of dirt near the railroad tracks. The trial court submitted both grounds of negligence to the jury to be determined as questions of fact. The jury returned a verdict in favor of the plaintiff for $5,000, and defendant has appealed from the judgment entered on the verdict.

Defendant's first contention is that the evidence is insufficient to sustain any verdict, in this, that it fails to show any actionable negligence on the part of the defendant. It will be noted that the first ground of negligence is based upon the acts of Koester. In his complaint the plaintiff alleged and upon the trial sought to prove that Koester was the foreman, and that the sewer was being constructed under his supervision and direction. The only evidence tending to establish this alleged fact is the testimony of the plaintiff to the effect that some days after the accident occurred, Koester stated to the plaintiff that he (Koester) was

in charge at the time that the accident occurred, and also that the station agent at Kenmare said to the plaintiff that Koester was in charge of the work. In other words, the only testimony which we are able to find in the record tending to establish that Koester was in charge of the work, or was anything more than an ordinary laborer, is the testimony of the plaintiff to the effect that these statements were made to him by these two parties. Opposed to this is the positive testimony of Koester himself that he was not in charge of the work. And the testimony of Balstad, the foreman in charge of the work (who was temporarily absent at the time the accident occurred) that Koester was not the foreman; that when the foreman Balstad was not present one McCoy was delegated to act as foreman, and that Koester was merely an ordinary laborer, and had no authority whatever, either over the men or over the work. There is also the positive testimony of one Cunningham, who was called as a witness for the plaintiff. Cunningham is a drayman at Kenmare, and he was working with his team at the excavation. He says that the foreman who hired him was not there the day the accident occurred; that he does not know who was directing the men that day; that he saw Koester working around there, but did not notice him giving any orders to any of the men.

As already stated, it appears that at the time the accident occurred Koester was the only one of the men engaged in the construction work left at the excavation, and that he was about to leave. Koester, in answer to questions propounded by plaintiff's counsel, testified that before going away that evening he looked to see if any tools had been left lying around; and it is contended by plaintiff that this is evidence that he was in charge of the work. The undisputed testimony of Koester, however, is to the effect that the foreman had given orders to all the men to pile the tools up when they quit work in the evening; that he (Koester) was merely looking to see if any one had forgotten to place his tools where they belonged; that he was not in charge of any tools except those who he used personally. A careful consideration of all the evidence bearing on the question leads us to the conclusion that there is no substantial evidence to sustain a finding that Koester was in charge of the construction work, or that he was anything more than an ordinary laborer engaged in the construction of the sewer. In our opinion, all the competent evidence in the case shows that Koester was not the foreman, or in charge of the work, but was merely an ordinary laborer

working under the direction and orders of the foreman. While Koester's alleged statements would have been admissible in corroboration, if the agency had been otherwise proved prima facie the agency or the extent of authority could not be established thereby. Cyc. says:

"The declarations of an alleged agent are not admissible against the alleged principal to prove the fact of his agency. Neither are the declarations of an agent admissible against the principal to show the extent of his authority as such agent. The agency must be proved by other evidence before his acts and statements can be shown against the principal." 31 Cyc. 1652—1654.

See, also, 10 Ency. Ev. 15—18: Elliott on Railroads, (2d ed.) § 217.

Neither do we believe that the declarations of the station agent were admissible to establish the agency and extent of authority of Koester.

"Declarations of another agent of the same principal are not admissible, but admissions of a general agent as to the extent of an inferior agent's authority may be received upon the same footing as admissions of the principal." 10 Ency. Ev. 21.

See, also, Elliott on Railroads (2d ed.) §§ 217—2-9.

There is no evidence in this case tending to show that the station agent at Kenmare had any authority, or exercised any function, other than that of an ordinary station agent. Manifestly it cannot be presumed that such station agent exercised any control over construction crews, or that foremen in charge of such crews were under his direction. The declarations of the station agent, made within the scope of his authority, were, of course, admissible; but we find no reason, either in the evidence or in the authorities, for holding the alleged statement of the station agent as to the agency of Koester to be one connected with matters within the scope of a station agent's authority. See Elliott on Railroads (2d ed.) § 303. We are of the opinion, therefore, that it was error for the trial court to deny the motion to strike out the evidence relating to the statements alleged to have been made by Koester and the station agent. We are also of the opinion that there was no substantial evidence tending to establish that Koester was a foreman or in charge of the construction work, and that that question should not have been submitted to the jury. We cannot say that the verdict would have been the same if these errors had not been committed. Hence the judgment must be set aside and a new trial had. Funk, Adm'r, v. St. Paul City Ry. Co., 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. Rep.

608; Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 Am. St. Rep. 531. In view of a new trial, however, we deem it necessary to consider some other questions presented on this appeal.

The second ground of alleged negligence is predicated upon the placing of the two piles of dirt near the railroad track. Plaintiff invokes § 4700, C. L. 1913, which reads:

"On or after the first day of January, 1915, it shall be unlawful for any such common carrier to erect or maintain on any standard gauge road on its line, or on any standard gauge sidetrack used in connection therewith * * * any coal chute, stock pen, pole, mail crane, standpipe, hog drencher, embankment of earth or natural rock, or any fixed or permanent structure or obstruction upon its line of railroad, or on any side track used in connection therewith, at a distance less than eight feet, measured from the center line of the track which said structure or obstruction adjoins: * * * Provided that station freight house platforms which have a vertical height of not more than four feet, measured from the top of the track rail, may be erected and maintained at a less distance from the center of the track which they may adjoin than herein specified."

The defendant contends that this statute has no application for two reasons: (1) That the piles of dirt shown to exist in this case were not embankments of earth within the purview of the statute; and (2) that the statute was enacted solely for the benefit of trainmen, and that hence, in case of violation thereof, a recovery can be had only by a person belonging to the class which the legislature intended to be protected by the statute. After a careful consideration, we have reached the conclusion that neither of the contentions advanced by the defendant can be sustained.

At the time the accident occurred the construction crew had ceased to labor. The two piles of dirt which are involved in this controversy were left in the condition in which they were with the intention at least that they should so remain during the night. The evidence does not show how long they had been where they were, nor how long they would be likely to remain. We believe that these embankments of earth were within the prohibition of the statute.

While it may be true that the statute was intended primarily for the protection of railroad employees, we are by no means satisfied that it was enacted solely for the protection of such employees. The statute

by its terms is a general one. According to the title thereof, its object is to regulate "the size of engine, motors and cars, and also the clearance of obstructions" on railroads. A penalty is provided for a violation of any of the provisions of the statute. Such penalty is recoverable in a suit brought by the state's attorney of the county wherein the violation occurred. It is made the duty of the state's attorney to bring such suit under the direction of the Railroad Commission upon duly verified information being filed with him by any person that the statute had been violated; and it is made the duty of the Railroad Commission to lodge such information with the proper state's attorney, when it comes to its knowledge that any violation of the statute has occurred. Section 4704, C. L. 1913. Even in the absence of statute it has been held that a railroad company is liable to passengers who are injured by obstructions placed too near the railroad tracks, as, for instance, where a freight car was placed so near the main track at a switch that a passenger sitting with his arm projecting from the sill of an open window is injured. Farlow v. Kelly, 108 U. S. 288, 2 Sup. Ct. 555, 27 L. ed. 726; Clerc v. Morgans, etc., Steamship Co., 107 La. 370, 31 So. 886, 90 Am. St. Rep. 319. In our opinion the duty imposed upon railroad companies by § 4700, supra, was not imposed solely for the benefit of railroad employees, but also for the benefit of the general public. In a somewhat analogous case of fences required by statute as a protection for animals, an action is given to the owners for the loss caused by a breach of the duty to fence. Almost the unanimous weight of judicial authority is to the effect that these statutes rest upon the police power of the state, and are for the benefit of the general public. Elliott on Railroads (2d ed.) § 1190. And it is generally held that in case a personal injury is sustained by reason of the failure to fence, an action will lie for the injury so sustained, and the breach of the duty to fence will be evidence of negligence. Hayes v. Mich. Cent. R. R. Co., 111 U. S. 228, 240, 4 Sup. Ct. 369, 28 L. ed. 410—415. It is also generally held that a duty to fence applies to passengers, and that a passenger may bring an action for injuries resulting from a duty to fence. Elliott on Railroads (3d ed.) § 1191. And by the weight of authority it is held that an employee injured by reason of the breach of the duty to fence may maintain an action for damages. Elliott on Railroads (3d ed.) § 1192. And the Supreme Court of Minnesota, as well as the federal Supreme Court, have held that where a child strays upon the track and is injured in consequence of the failure

of the company to fence its road, an action will lie, and the breach of the duty to fence is evidence of negligence.   Rosse v. St. P. & Duluth Railway Co., 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591, 64 Am. St. Rep. 472; Hayes v. Mich. Cent. R. R. Co., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. ed. 410.

In Union Pac. R. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. ed. 434, the Supreme Court of the United States had occasion to consider the effect of noncompliance with a statute of the state of Colorado requiring the owners of coal mines to fence their slack pits.   The statute by its express terms was enacted for the protection of cattle and horses.   A boy some 12 years old becoming frightened by the threats of other boys, and attempting to escape from them, fell into the burning slack, and was injured.   In that case, as here, it was contended that, inasmuch as the statute was enacted for the protection of horses and cattle, it could not be invoked in a case where personal injuries were sustained.   In disposing of that contention the Supreme Court of the United States said:

"The only question that could arise upon this part of the case is whether the court should have instructed the jury—as, in effect, it did—that the failure of the company to put a fence around the slack pit, as required by the statute of Colorado, was negligence, of which the plaintiff could complain in this action for personal injuries sustained by him. Primarily, that statute was intended for the protection of cattle and horses.   But it was not, for that reason, wholly inapplicable to the present case upon the issue as to negligence.   In Hayes v. Michigan Cent. R. Co., 111 U. S. 228, 240 (28: 410, 412), which was an action by an infant for personal injuries sustained by the alleged negligence of a railroad company in not properly guarding its line within the limits of the city of Chicago, this court, speaking by Mr. Justice Matthews, said: 'In the analogous case of fences required by the statute, as a protection for animals, an action is given to the owners for the loss caused by the breach of the duty.   And although in the case of injury to persons by reason of the same default, the failure to fence is not, as in the case of animals, conclusive of the liability, irrespective of negligence, yet an action will lie for the personal injury, and this breach of duty will be evidence of negligence.   The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his in-

dividual compensation, and to an action for its recovery.' The nonperformance by the railroad company of the duty imposed by statute, of putting a fence around a slack pit, was a breach of its duty to the public, and, therefore, evidence of negligence, for which it was liable in this case, if the injuries in question were, in a substantial sense, the result of such violation of duty." 152 U. S. 282, 283, 38 L. ed. 443.

See, also, Martens v. Public Service Co., 219 Ill. App. 160.

We are of the opinion, therefore, that the plaintiff may predicate an action upon defendant's breach of the duty prescribed by § 4700, supra. A great deal of the evidence in the case relates to the second ground of negligence. We have carefully considered such evidence, and have reached the conclusion that under it the questions of negligence and proximate cause are questions of fact for the jury.

It is also contended that the deceased was guilty of contributory negligence as a matter of law. In view of the youth of the deceased, we do not believe it can be said that there was contributory negligence as a matter of law. See Elliott on Railroads (2d ed.) § 1261.

It is also suggested that the verdict is excessive. Under the evidence here we are not prepared to say that the verdict is so large that the court should interfere therewith.

Reversed and remanded for a new trial.

BRONSON and BIRDZELL, JJ., concur.

ROBINSON, J. I concur in reversal. In my opinion, there is no liability.

GRACE, C. J. I concur in the result.

PER CURIAM. Plaintiff has petitioned for a rehearing. In the petition it is argued that, inasmuch as this court ruled that there was sufficient evidence to sustain a verdict as to one of the two grounds of negligence upon which plaintiff's action is predicated, the court should have affirmed the judgment. It is doubtless true that where a cause of action for personal injury is based upon several grounds of negligence a recovery may be had if any one of the grounds is established, but we do

not believe that the verdict in this case can be sustained by applying this rule. In this case the plaintiff asserts two grounds of negligence: (1) The acts of Koester in permitting Grant Clark to get upon the moving train; and (2) the placing of the piles of dirt too near the railroad tracks. This court ruled that the first ground was not sustained by any competent evidence, and that the court erred in admitting evidence relating to such first ground. It is apparent that this incompetent evidence was considered by the jury, and, so far as we know, it may have been a controlling factor in arriving at the general verdict. For in answer to special interrogatories submitted with the general verdict the jury specifically found that "Koester was in charge of the work and embankments testified to on July 26, 1919," and that he "was negligent in permitting Grant Clark to get upon the freight car."

There was no special finding, however, covering the question of proximate cause. The jury by the general verdict said that the defendant was guilty of negligence, and that such negligence was the proximate cause of the death of Grant Clark, but they did not say that the placing of the embankments of dirt was the proximate cause. If there had been a special finding to that effect a wholly different situation would have been presented. It may be that in arriving at the general verdict the jury, or some of them, considered that the acts of Koester was the proximate cause. It is elementary that in order to render a party liable to another for damages resulting from negligence it must not only be shown that the party sought to be charged was negligent, and that the party seeking recovery was damaged, but it must also be shown that the damages sustained proximately resulted from the negligence of the party so sought to be charged.

In the petition for rehearing it is contended that the court should say, as a matter of law, that the placing of the embankments of dirt was the proximate cause of the death of Grant Clark. We are unable to agree with this contention, and adhere to the views expressed in our former opinion that both the question of negligence and proximate cause were, under the evidence here, questions of fact for the jury.

A rehearing is denied.

CHRISTIANSON, BRONSON, ROBINSON and BIRDZELL, JJ., concur.