[File No. 6733.]

ELEANOR BENTLEY, Respondent, v. OLDETYME DISTIL-
LERS, INC., a Corporation, Appellant.

(298 NW 417)

Opinion filed April 19, 1941.   Rehearing denied June 16, 1941.

*Clyde L. Young,* for appellant.

*Simpson, Mackoff & Kellogg,* for respondent.

54

Burr, Ch. J. The judgment in favor of the plaintiff on the former trial was reversed, and a new trial granted. See Bentley v. Oldetyme Distillers, 69 ND 587, 289 NW 92.

On this trial a jury was waived; the court made findings of fact and conclusions of law favorable to the plaintiff; judgment for $10,000 was entered thereon, and the defendant appeals, setting forth twenty-three specifications of error. These fall into four classes—the findings of the court relative to the relationship between the plaintiff and the defendant; contributory negligence on the part of the plaintiff; errors of law occurring at the trial; and excessive damages allowed.

The trial court found that one Gannon, as general agent of the defendant, had the authority to take plaintiff with him as such agent, to act as "hostess" in furthering the business of defendant; that he did so employ her; and while en route to the scene of labors, traveling with Gannon, she was severely injured by reason of Gannon's negligence.

We need not recite the facts set forth in the former opinion. On the new trial, these were not changed materially, but were supplemented. Plaintiff offered further evidence relative to the scope of the authority of L. P. Gannon, concededly the agent of the defendant. On the former case we held there was no proof of any authority on the part of Gannon to take the plaintiff with him for the purpose set forth in the pleadings; that there was nothing in the record to show the plaintiff was the guest of the defendant; that if the guest of anyone, she was the guest of Gannon, and that no authority to Gannon to invite a guest to ride with him when on the business of the defendant was

shown. There is nothing in the record of this trial showing any authority on the part of Gannon to invite the plaintiff to ride with him as the guest of the defendant.

The plaintiff known by Gannon to be a barmaid and having experience in that work was riding with Gannon in an automobile on the way to Dickinson for the purpose of acting as "hostess" for defendant at the opening of a saloon.

The record shows Gannon was the sole contact man for the defendant in promoting its business in the state of North Dakota. The defendant is a wholesale distributor of certain brands of whisky. The Northwest Beverage Company had a monopoly on the sale of defendant's products to retailers in North Dakota. Gannon was the representative of the defendant in this state, with broad powers to do anything and everything his judgment determined was necessary to promote good will toward the products of the defendant. Practically the only limitations on his authority were that he could not make sales, as that would infringe upon the rights of the Northwest Beverage Company, and his expense account could not exceed a certain amount. This amount is not stated, but the record shows there was a maximum. However, if Gannon exceeded that maximum, the only penalty apparently was that the excess was taken out of his salary. He was allowed his expenses in travel, hotel, entertainment of bartenders, etc.

That Gannon was industrious on behalf of his employers in this respect is evidenced by the bills he presented to the defendant for "samples," which he had withdrawn for its use, one bill for these "samples," furnished through the medium of the Northwest Beverage Company, averaging $50 per month, or $250.63 from February 6, 1937, to July 3, 1937, and this was paid. As the record shows defendant paid only for the goods he was authorized to order and that these were merely for samples, it is clear the defendant gave Gannon great latitude for action, and he was active. In one bill alone the defendant confirmed an order given to Gannon by the Northwest Beverage Company for three hundred cases of the brands handled by the defendant.

He could invite a bartender to dinner, and take him out, provided he did not spend too much money; he would have the right to convey such bartender to places, to night clubs, etc., in the interests of the

business, even if the defendant did not know who was invited, or when he was invited—that was left to the good judgment of Gannon. He was permitted to purchase from the Northwest Beverage Company the products of the defendant for the purposes of demonstrating the quality of the commodities, interesting bartenders, promoting business sociability, etc., and he was reimbursed by the defendant for such expenditures.

His actions in visiting places in this state were not circumscribed. It was part of his business to attend openings of saloons for the purpose of ingratiating himself with the saloon keepers and the bartenders, and to promote the sales of the Northwest Beverage Company so far as that company was selling the products of the defendant. As to when Gannon should attend such openings, how he should go, how he should handle the situation were all left to his judgment and discretion. He had no specific authority to employ anyone at the expense of the company, but he was not forbidden to have anyone with him to assist at these gatherings.

While defendant's witnesses testify Gannon had no authority to hire employees, or women in any capacity, we find nothing in the record showing that he was so informed; and when we consider the broad scope of authority admittedly given to him, and his general practice with reference to "hostesses," it is quite clear he was not prohibited from employing them, provided he deemed such employment necessary to further the business of defendant and his expense account did not exceed what defendant considered the maximum.

The writer, speaking for himself alone, is of the opinion it is not unreasonable to assume defendant knew, approved, and made use of the conjectured seductive effect of "hostesses" to give a semblance of respectability to its business, and clearly, Gannon decided that such use would promote the interests of the defendant.

One Rubner, the district manager for the defendant company, whose territory included North Dakota, testified that Gannon "was to act as the representative of Oldetyme Distillers in North Dakota, as what is known in our business as a contact man, building good will, the education of the distributor men in the better knowledge of our product, calling on the retail outlets, explaining the merits of our product

and, in general, representing Oldetyme Distillers in the welfare of the conduct of their business."

This witness showed that Gannon was the only representative of defendant in this state. He was expected to travel to the various saloons to create good will for defendant's products and make it easier to sell to retailers. He stated that defendant left it to the good judgment of Gannon to do what he thought would be proper in order to promote good will among the bartenders; other than being limited in the amount of his expense account, these matters were left to his good judgment; whatever he did was agreeable to the company if he stayed within the limits of his expenses. He testified it was part of the routine duties of Gannon to keep "an eye open for new places that would open up," and he would be expected to go there, either with salesmen of the Northwest Beverage Company, or alone, in order to see if they could place products of the company. He testified that such a representative had a right "to indulge in any legitimate practices to the extent of developing our business;" and when asked, "And you left it to his good judgment as to how that was to be carried out?" he said, "That answers it there, certainly."

One Herbst, the general sales manager of the defendant, testified that the witness Rubner had authority to hire salesmen, being the district manager; and the instructions to the salesmen would be given by Rubner personally; that there was no one above him in the territory assigned to him. This witness wrote to Mr. Gannon in January, 1937, welcoming him as a member "of the sales organization of Oldetyme Distillers" and explained to him in general the details of the policy under five subdivisions. These dealt largely with the question of expense account, and Gannon was directed to pay in cash to the distributors for any samples that he would purchase; he was directed how to use these samples and for what purpose, and was advised as to the necessity for correct action on his part to prevent the company from being held open to ridicule or criticism. He was urged to conduct himself in such a manner that he "will be a credit at all times to Oldetyme." He was directed not to violate any of the regulations of the Federal Alcoholic Administration Board, and was admonished that "Your future progress with this Company will depend entirely upon

the results that you produce both as regards the development of a satisfactory volume and the procuring of that business at a minimum of expense."

There is no question but what Gannon was the agent of the defendant. An agent has authority: "1. To do everything necessary or proper and useful in the ordinary course of business for effecting the purpose of his agency. . . ." N.D. Comp. Laws, 1913, § 6340.

The record shows conclusively that there was no limitation on the scope of the authority of this agent other than not making sales and the limitation with reference to the extent of his expense account. There was nothing to prevent Gannon from making use of barmaids in the process of promoting good feeling toward the products of the defendant, provided the expense account did not exceed the monthly maximum, and if it did, Gannon paid the excess.

Both Rubner and Herbst show quite conclusively it was well understood Gannon should ingratiate himself in the good graces of bartenders, as such people could promote the choice of defendant's liquors on the part of imbibers. The plaintiff was in such class. Gannon knew her to be a bartender. She was with him on the way to Dickinson for the purpose of assisting in the promotion of the defendant's business along the lines authorized in Gannon's agency.

That Gannon was killed and the plaintiff severely injured on this trip is not disputed. Part of the liquors which Gannon had with him in his car at the time were purchased from the. Northwest Beverage Company for Gannon's use in promoting the business of the defendant at the opening of the saloon in Dickinson, and the defendant thereafter paid for those liquors. Clearly, there was no question but what Gannon was on the business of the defendant at the time of the accident, and the plaintiff was with him for the purpose of promoting the business of the company within the scope of Gannon's agency. The defects in the proof adduced on the former trial are clearly supplied so far as the scope of Gannon's agency is concerned.

The evidence shows conclusively that plaintiff was not the guest of the defendant. In addition to the fact that Gannon had no authority to invite a person to ride as a guest of the defendant, the presence of the plaintiff in the automobile was not that of a guest. While it

is urged that she was traveling more as a passenger than as a guest, yet, strictly speaking, she was not a mere passenger.

This is not a case where the plaintiff, seeking a passage to Beulah, offered to work for the defendant, or for Gannon, in exchange for the transportation. It was not a suggestion moving from her. Rather, it is a case where Gannon solicited her service on behalf of the company, and, as a remuneration therefor, promised to convey her to Beulah thereafter.

In Orr & Lanning v. Boockholdt, 10 Ala App 331, 336, 65 So 430, 431, it is said: "A passenger is a person conveyed for hire from one place to another, and the relation of carrier and passenger is, therefore, usually dependent upon the existence of a contract of carriage of some sort, since it is the existence of such a contract which distinguishes a passenger from a licensee, a trespasser, or an employee of the carrier, etc.,"citing 5 Am & Eng Enc Law, 487.

See also Vandalia R. Co. v. Darby, 60 Ind App 294, 301, 108 NE 778, 779; Chesapeake & O. R. Co. v. Smith, 162 Ky 747, 750, 172 SW 1088, 1089.

An invited guest "is not a passenger, either in the legal sense of that term, or in the sense in which it is commonly and ordinarily understood." Arms v. Faszholz (Mo App) 32 SW(2d) 781, 782.

However, the relation of passenger and carrier is not necessarily limited to public carriers. In Sleeper v. Massachusetts Bonding & Ins. Co. 283 Mass 511, 513, 186 NE 778, 779, it is held that one carried in an automobile from one town to another and returned for "enough to pay for his (driver's) gas, oil and meals" is a passenger during the trip, under the terms of an insurance policy, even though the insured was not a common carrier—a single instance, while it continues, is that of carrying a passenger.

It is clear from the evidence that the expense of transporting the plaintiff from Bismarck to Dickinson and from there to Beulah was to be borne by Gannon. The fact that he was to pay for her services by transportation to Beulah does not alter the relationship between the plaintiff and the defendant under the broad powers which Gannon had to do anything and everything which he deemed wise and necessary in carrying out the work which was within the scope of his employment.

At the time of the accident, the plaintiff was in the service of the defendant under an agreement with Gannon, which was made within the scope of his agency.

There are several allegations of error with reference to the introduction of testimony. One Leon Bryan, who claimed to have organized the Northwest Beverage Company, and who acted for a time as manager thereof, testified that while he was connected with his company, he secured for it the right to be the sole representative of defendant for the state of North Dakota so far as the sale of its products were concerned; that the officers of defendant company, especially the witness Rubner, told him of the purpose of the company to send a contact man to the state; and that when Gannon was appointed, he interviewed him. They discussed the business of the defendant, and Gannon told him why he was there, and, in general, what his authority was.

One Haggarty, a witness for the plaintiff, was also asked if Gannon told him anything "in regard to his authority, and position he occupied."

That Gannon was the general agent of the company for the purposes discussed in these conversations is shown by the officers of the company themselves—witnesses who testified in the case. With the exception of the testimony as to the extent of his authority, Bryan and Haggarty were competent to testify as to statements made by Gannon within the scope of his authority. Such testimony is not presented to prove agency. See Grant County State Bank v. Northwestern Land Co. 28 ND 479, 503, 150 NW 736, 743; Lake Grocery Co. v. Chioatri, 34 ND 386, 399, 158 NW 998, 1002. When this agency is proved by competent evidence, then the declarations of the agent made within the scope of his authority may be shown. Clark v. Payne, 48 ND 911, 187 NW 817.

With reference to the testimony permitted to be given by these witnesses relative to the scope of the authority of Gannon as stated by him, it is sufficient to state that with reference to the testimony given by Bryan, he added nothing to what the officers of the defendant stated on the stand. His testimony was similar to that furnished by the company itself in the examination of its officers, and did not differ

materially so as to affect the case. The case having been tried to the court, the admission was not prejudicial.

With reference to Haggarty, his answers merely were that Gannon said: "He was out here to drum up business here for the Oldetyme Distillers. . . . He told me several times that he had unlimited expense account and could spend what he wanted to for drinks and he always got the money back. . . . . He was the sole representative for the Oldetyme Distillers in North Dakota and South Dakota."

When asked if Gannon had said whether anyone else had authority in managing the affairs of the company, he answered he did not think so, and he did not recite any statement of Gannon as to the extent of the authority, or how much authority Gannon said he had. There is no reversible error in this respect.

The acts relied upon by appellant to show contributory negligence on the part of the plaintiff do not differ materially from those set forth in the former opinion. In that opinion we held that in the light of the conditions present, the failure of the plaintiff to leave the car at Hebron, Richardton, or Taylor was not of such character that it could be said, as a matter of law, she is precluded from recovering because of negligence. It was a question for the jury in that case, and a question for the trial court in this case. The court found she was not negligent, and we see no reason for disturbing that finding.

At the opening of the trial, defendant moved the court to require the plaintiff to elect whether the case would be prosecuted on the guest theory or the theory of employment. The court overruled the motion, and this ruling is assigned as error. Other than specifying this ruling as error, there is little, if any, reliance placed thereon. The motion to elect was based largely upon the allegations in the complaint, which appeared to proceed upon two theories—that the plaintiff was the guest of the defendant, engaged in furthering its business, and also upon the theory of employment. But the theories are not so inconsistent as to require election. No evidence had been introduced at the time the motion was made; the theory of the plaintiff's case had not been developed. True, her presence in the car is accounted for on the theory of guest, but her presence in the car is accounted for also because of the peculiar relations existing between her and the de-

fendant, through Gannon. The plaintiff seemed to consider that she was in a sense an employee without pay, an assistant of Gannon, helping him to carry out the work of his agency, and that he was not forbidden to have such assistants with him; that she was in the car, not so much for her own pleasure or benefit, but to assist the company in the furtherance of the object it had in mind when Gannon was appointed; in some sort of way a passenger on a joint enterprise with one doing what he had a right to do.

It is not material how the pleader terms her. The main issue is to determine the facts to show what relationship the plaintiff had to the defendant. No error in this respect has been shown.

The last point raised is the allegation that the damages allowed were excessive. The plaintiff was seriously injured. Of this there is no doubt. She was earning, including tips, approximately $125 per month and board. She was disabled for over twenty months. Her injuries are referred to in the former opinion. Her back was broken, some nerves severed, she wore an iron brace almost a year, she was unconscious for days, still has pain and other effects. Her loss of wages, doctors' bills, hospital bill, and other expenses proved amount to about $3,000. That she suffered excruciating pain for months at a time is well established. It is true she is still living, but the testimony of the physician shows she is permanently injured. It is difficult to say to what extent. She had recovered somewhat from the condition in which she was at the time of the first trial; but the record shows that her injuries are serious and permanent.

That plaintiff was injured by the gross negligence of Gannon is beyond dispute. It is not contended that if Gannon, acting within the scope of his authority, and in order to further the defendant's business, had the right to convey this plaintiff to Dickinson for the purpose of acting as hostess at the opening of a saloon, the defendant would not be liable for this negligent act of its agent. In this respect the contention of the defendant is centered upon the proposition that Gannon had no authority to invite the plaintiff to ride as a guest, that she was not an employee, or on the company's business; and that his transporting her as a guest had not been ratified by the company.

In view of our holding that such contention is not tenable under the

facts in this case, we need not discuss the proposition that in view of the record here, the principal would be bound for this negligent act of Gannon. In addition, we note there is testimony to the effect that defendant's manager Rubner knew for some time prior to the accident that Gannon was reckless and drinking to such an extent the company intended to discharge him. The jury on the former trial assessed plaintiff's damages in the sum of $10,000. The court on this trial arrived at the same conclusion upon the evidence presented to him. We see no reason for disturbing the finding of the trial court in this respect. The judgment appealed from is affirmed.

CHRISTIANSON, J., concurs.

MORRIS, J. I concur in the syllabus and in the result reached by the foregoing opinion.

NUESSLE, J., concurs.

BURKE, J., being disqualified, did not participate, HON. JOHN C. LOWE, Judge of Fifth Judicial District, sitting in his stead.

LOWE, District J. (concurring).

The undersigned concurs in the majority opinion in all particulars, except the paragraph reading:

"The writer, speaking for himself alone, is of the opinion it is not unreasonable to assume defendant knew, approved, and made use of the conjectured seductive effect of 'hostesses' to give a semblance of respectability to its business, and clearly Gannon decided that such use would promote the interests of the defendant."

The law of our state under which the defendant was carrying on business was enacted as an initiated law by the people of the state at an election held November 3, 1936.

It is the opinion of the undersigned that the above quoted paragraph carries with it a strong imputation that the business referred to is not a respectable one, and that there should be a judicial determination on that point at the expense of criticizing the wisdom of the people in providing for the sale of intoxicating liquor. It is quite clear that the wisdom, justice, policy, or expediency of a statute are for the leg-

islature alone. This applies as well to an initiated law when the people act as law makers.

"This court is itself created by law, and is not superior to, but bound by, all valid enactments of the legislature. Its function is to interpret —not to make—laws. Whether or not valid legislative enactments are wise or unwise, desirable or undesirable, is not for us to say, but is purely a question for the legislature, and the responsibility for the continuation or abolishing of such legislative policy rests solely upon the legislature, and not upon the courts." Van Woort v. Modern Woodmen, 29 ND 441, 151 NW 224. "A statute which violates, neither expressly nor by necessary implication, any constitutional provision, is itself conclusive evidence of its propriety and justice." 8 Cyc. 804; State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918A 156, Ann Cas 1918A 583.

Under our laws a judge, or any other person, has the right to express publicly his private opinion concerning the wisdom of any law passed by the legislature, or any initiated law, but it seems to be well-settled that the three constitutional branches of government should each refrain from criticizing the official acts of the other.