[Civ. No. 4206.   Second Appellate District, Division Two.—May 26, 1924.]

## MARIE L. VORBECK, Respondent, v. PATTEN–DAVIES LUMBER COMPANY (a Corporation), Appellant.

[1] EMPLOYER AND EMPLOYEE—EMPLOYMENT OF ONE BY SERVANT—NEGLIGENCE—LIABILITY OF EMPLOYER.—One employed by a servant to assist in the performance of his master's business is not an employee of the latter, for whose negligence the master will be liable, unless the servant had authority, either express or implied, to employ the help.

[2] ID.—INJURY TO PEDESTRIAN—NEGLIGENCE—DRIVER OF TRUCK EMPLOYED BY SERVANT—AUTHORITY OF LATTER—LIABILITY OF EMPLOYER.—A lumber company was not liable in damages for personal injuries suffered by a pedestrian who was struck by one of the company's trucks, where the driver of the truck was not employed by the company, but his services to drive the truck on the occasion of the accident were secured by an employee who was not authorized to move the trucks when loaded, nor to employ the services of others for that purpose, and who, therefore, had no implied authority to employ another to do work which he was not employed to do, and for the doing of which he was in no way responsible.

(1) 26 Cyc., p. 1085.   (2) 26 Cyc., p. 1521.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Monroe, Judge.   Reversed.

The facts are stated in the opinion of the court.

Jones & Weller for Appellant.

C. A. Stice and D. A. Stuart for Respondent.

CRAIG, J.—While the plaintiff was walking along a public road in Los Angeles County in the evening of October 2, 1920, after dark, she was struck by one of appellant's

1. Liability of master for injury to person or property of one to whom he owes no contractual duty, by acts of volunteer whom servant permits to assist in performance of master's service, notes, 13 L. R. A. (N. S.) 572; 45 L. R. A. (N. S.) 382; L. R. A. 1916B, 630. See, also, 16 Cal. Jur. 1098; 18 R. C. L. 785.

trucks which was returning to the latter's place of business after delivering lumber to a customer.

It was Saturday, and none of appellant's truck drivers were at its yard when this particular load was placed on the truck. One Baldwin was employed to pile lumber and load trucks, which he testified were taken out by the company's drivers, who were sent from the office. Baldwin was not a driver, was not employed in the office, nor did he do the employing, but was generally under the supervision of a yard foreman, although at the particular time in question he was alone in the yard. A young man named Isherwood, who worked in a bakery next door, came into the yard at about 5 P. M., and assisted in loading the truck; Baldwin remarked that he wished the load could be gotten out so that the customers could work Sunday, to which Isherwood replied, "I will take it." He made the delivery, and before he returned it became dark; the truck was without lights, and Isherwood did not know of respondent's presence upon the road until she was struck.

At the conclusion of the testimony the trial court instructed the jury that the defendant was liable in this case, and that the only question for them to determine was the amount of damages. A verdict was accordingly returned for the plaintiff, and the defendant appeals from the judgment upon the ground that Baldwin had no authority to employ Isherwood; that the latter was not its employee, and that the lumber company was not liable for the consequences of his acts.

Respondent relies principally upon the rule ~~~ ~~~ ~~~ ~~~ ~~~ distinct causes are operating at the same time to produce a given result, and the original negligence is operative ~~~~~ the accident, and is a contributing cause thereto, and its effect is not broken or disturbed by the intervention of the other cause but is only accelerated or augmented thereby, then either or both parties who created the cause are liable for the damage occasioned thereby. And it is argued that had the truck been equipped with headlights the accident would not have occurred; that this truck was kept by appellant for the purpose of delivering lumber to customers, and that Baldwin was in charge of the yard for the purpose of loading trucks and sending them out to deliver lumber; that he sent Isherwood with the load, and gave him instructions, from which it is inferred that Isherwood was

appellant's employee, and that it was liable for his acts. The authorities cited by respondent all discuss the rule mentioned, but there seems to be only one question presented, which is the status of Isherwood, because if he had no authority to move appellant's truck at Baldwin's direction, there is no evidence of intention that it should be operated at that time, and the absence of equipment from an automobile standing in the lumber-yard would create no liability.

Baldwin testified that the superintendent of the yard was off for the afternoon, and that there were no drivers there at that time, and that he was alone. He testified in response to questions by the court that he was not in charge of the yard, but was loading trucks. He was then asked: "But you were in charge of getting that out?" to which he replied in the affirmative, but in response to a question then asked by counsel: "You mean you were in charge of—," he said: "Getting the trucks loaded." He stated that he had nothing to do with employing men for any work, but that Isherwood volunteered to make the delivery in question, though he had not driven the truck before that time— that he was a baker. Dissieux, a witness for the defendant, who at the time of the accident was manager of appellant's yard, testified that he and the yard foreman did the hiring of drivers, and that Baldwin had at no time had anything to do with employing labor; that no conversation had ever occurred in which the matter of Baldwin employing men was mentioned. He stated that when regular drivers were not present to take out a load it was always held until a driver came in, but that they did not pick up someone else to make delivery. Isherwood testified that he had helped around the yard before, but had never driven one of the trucks out, that he was "just bumming around there." This testimony leaves no substantial conflict in the evidence, which establishes the fact that Baldwin had no actual authority to employ truck drivers under any circumstances, or to do anything further than load the trucks. He had never before secured the services of Isherwood to drive a truck, and in doing so upon this occasion acted entirely outside of the scope of his authority as an employee of the defendant company.

In *Gates* v. *Dailey*, 54 Cal. App. 654 [202 Pac. 467], wherein the employee was himself the regular driver, and

entrusted to another the performance of his own duties, this court said:

"The cases in which masters have been held liable for the negligence of assistants to their regularly employed servants, laying aside those instances in which the servants have engaged the assistants under an express authority conferred by the masters, seem to be divided into two classes: First, those cases in which the assistants committed the acts of negligence in the presence, and therefore impliedly under the direction, of the servants; second, those in which the assistants, although being negligent while working out of the presence of the servants, were engaged in the rendition of services which they had been accustomed to perform at the servants' request for considerable periods of time, thus giving rise to the view that the servants enjoyed an implied authority to engage them."

We do not think the facts of the instant case bring it within the purview of either of these classes. Baldwin's duty was to load the trucks; drivers constituting another set of employees were hired to make deliveries when loaded; in so far as Isherwood may have helped in the loading, he assisted Baldwin, but when he volunteered to do the driving he assumed the duties of employees of a distinctly different capacity. The latter are so segregated as to be required by law to procure licenses from state authorities before they shall operate automobiles upon the public thoroughfares.

[1] The general principle is announced in many cases from other states that one employed by a servant to assist in the performance of his master's business is not an employee of the latter, for whose negligence the master will be liable, unless the servant had authority, either express or implied, to employ the help. As was said in *Thyssen* v. *Davenport, I. & C. S. Co.*, 134 Iowa, 749 [13 L. R. A. (N. S.) 572, 576, 112 N. W. 177]:

"But, generally speaking, we think the rule of these authorities is not grounded upon the thought that one who assists a servant becomes thereby a servant of such servant's master, except it be in these cases where we may find express or implied authority in the servant to employ or permit the assistance so rendered. In the absence of such authority, the one safe and logical ground upon which to rest the liability of a master for the negligence of a volunteer assistant of his servant is the negligence of the servant in

inviting or permitting a stranger to perform, or assist in the performance of, the work which was intrusted to his own hand."

*Board of Trade Bldg. Corp.* v. *Cralle,* 109 Va. 246 [132 Am. St. Rep. 917, 22 L. R. A. (N. S.) 297, 63 S. E. 995] is much in point. The building corporation employed two operators to run the elevators in its seven-story building, but when the plaintiff entered, desiring to go to an upper floor, the operators were in other parts of the building. One Zachary, who was in the company's employ to oil and care for the elevators and do general work as "hall boy," called upon another man who was present, but not employed by the company, instructing him how to manage the elevator, and asked him to take the plaintiff up. No one was authorized to employ elevator operators except the machinist and engineer in charge of the building, and no one except the regular operators was authorized to run the elevators. Plaintiff was injured and brought suit for damages. The supreme court of Virginia, in reversing a judgment against the company, said:

"The uncontradicted evidence shows that Zachary, the 'hall boy,' had no express authority to employ anyone to operate the elevators. It being no part of his duty to operate them, or to see that they were operated, it would seem clear that he had no implied power to employ another to do work he was not employed to do, and for the doing of which he was in no way responsible.

"In the case of *Taylor* v. *Baltimore & O. R. Co.,* 108 Va. 817 [62 S. E. 798], which involved the question of whether or not the railroad company was liable for injuries suffered by the plaintiff, who had been requested by the conductor in charge of a freight train of the railroad company to assist him in unloading freight, as he was late, and his men were out of place, it was held that the plaintiff was not entitled to recover, because the conductor had no authority to create the relation of master and servant between the railroad company and the plaintiff, as well as because he had no intention of creating such relation in requesting the plaintiff to assist him in his work."

[2] The positive evidence in the case at bar is all to the effect that Baldwin was not authorized to move the trucks when loaded, nor to employ the services of others for that purpose; and it therefore necessarily follows that he had

no implied authority to employ another to do work which he was not employed to do, and for the doing of which he was in no way responsible.

The judgment is reversed.          -

Finlayson, P. J., and Works, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1924.

All the Justices concurred.