WALTER COPP *vs.* RALPH PARADIS.

Somerset.     Opinion November 20, 1931.

*Bernard Gibbs*, for plaintiff.
*Butler & Butler*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

STURGIS, J.    Action on the case to recover property damages resulting from the negligent operation of the defendant's truck by a person invited to ride and permitted to drive by the defendant's servant. At the close of the plaintiff's case, a nonsuit was entered and exceptions reserved.

The evidence warrants the finding that, on September 5, 1930, the defendant's truck driver, Arthur Tancread, having been ordered to haul a load of supplies from Lewiston to Dead River, in-

vited a friend, Leo Carpenter, to accompany him. Tancread drove until they stopped for gas on the return trip, when he permitted Carpenter to take the wheel and the latter was driving when the truck collided with the plaintiff's car. The defendant had given Tancread no express authority to invite Carpenter to ride with him or to drive and had no knowledge of his presence in the truck until he met it on its way to Dead River with the men in it. Tancread was then driving and, so far as the record shows, the defendant passed without speaking. When the collision occurred, the plaintiff himself was in the exercise of due care but the substitute operator was negligent.

The relation of master and servant arises out of contract and the assent of both parties is essential. Every person has a legal right to work for whom he pleases. The employer has the right to select his employees, and his right of selection lies at the foundation of his responsibility for the acts of his employer. The relation of master and servant can not be imposed upon a person without his consent. *Eaton* v. *European & North American Railway Co.*, 59 Me., 520; *Butler* v. *Mechanics' Iron Foundry Co.*, 259 Mass., 560, 54 A. L. R., 849; *Haluptzok* v. *Great Northern Railway Co.*, 55 Minn., 446; *Kirk* v. *Showell F. & Co., Inc.*, 276 Penn., 587.

A master is liable to third persons for damages resulting from his servant's negligence while acting in the course of his employment, or as it is sometimes expressed, within the scope of his authority, but the relation of master and servant at the time of and in respect to the acts complained of must be shown. *Karahleos* v. *Dillingham*, 119 Me., 165; *Maddox* v. *Brown*, 71 Me., 432. This relation may grow out of a servant's invitation or permission to another to assist him in the work with which he is entrusted if the servant be clothed with authority therefor, either express or implied. In such a case, the servant is held to have acted within the scope of his employment and the assistant, for the time being, to be the master's servant, for whose negligent acts he is liable. Such authority to employ an assistant, if not express, may be implied from the nature of the work to be performed or when an emergency arises requiring assistance or from the general course of conduct of the business of the master by the servant for so long a time that

knowledge or consent on the part of the master may be inferred. 18 R. C. L., 785; *Butler* v. *Mechanics Iron Foundry Co.*, supra; *Hollidge* v. *Duncan*, 199 Mass., 121; *Haluptzok* v. *Great Northern Railway Co.*, supra; *Kirk* v. *Showell F. & Co., Inc.*, supra.

The converse of the rule just stated is equally true. Where a servant employs another to perform or assist him in the performance of his work, without express or implied authority from or a subsequent ratification by his employer, the relation of master and servant between the employer and the assistant does not exist and the liability of the employer can not be predicated on that relation. *Emison* v. *Wylam Ice Cream Co.*, 215 Ala., 504; *Thyssen* v. *Ice & Storage Co.*, 134 Iowa, 749; 13 L. R. A. (N. S.), 572; *Haluptzok* v. *Great Northern Railway Co.*, supra; *Board of Trade, etc.* v. *Cralle*, 109 Va., 246; 39 Corpus Juris, 1272.

An examination of the decided cases, however, discloses a general acceptance of the view that, while the relation of master and servant does not exist between the employer and an assistant engaged by his servant, without previous authority or subsequent ratification, the employer is not necessarily absolved from liability for the results of the assistant's negligence. The courts accepting this doctrine are not in accord as to the circumstances which will impose liability or the reasons which underlie their conclusions.

The liability of the master is affirmed, in some cases where this question arises, on the ground of "constructive identity," as it is termed, and it is held that, where a servant to whom is entrusted the operation of his master's automobile, without authority or ratification, permits another in his presence to drive it in furtherance of the master's business, the master is liable for the results of the driver's negligence on the theory that the driver is an instrument in the hands of the servant. *Emison* v. *Wylam Ice Cream Co.*, supra; *Gibbons* v. *Naritoka*, 102 Cal. App., 669; *Indianapolis* v. *Lee*, 76 Ind. App., 506; *Thixton* v. *Palmer*, 210 Ky., 838; *Hendler Creamery Co.* v. *Miller*, 153 Md., 264; *Geiss* v. *Twin City Taxicab Co.*, 120 Minn., 368; *Slothower* v. *Clark*, 191 Mo. App., 105; *Thomas* v. *Lockwood Oil Co.*, 174 Wis., 486. These cases seem to hold that the negligence of the assistant in the presence of the servant imposes liability on the master without regard to whether the

negligence of the servant was also a proximate cause. An extended discussion of this broad theory of constructive identity and the supporting cases appears in the Annotation appended to the report of *Thixton* v. *Palmer*, supra, in 44 A. L. R., 1382.

In *Grant* v. *Knepfer*, 245 N. Y., 158, 54 A. L. R., 845, the rule just stated is somewhat qualified, and properly so, we think. Although the decision is finally based on Highway Law, Sec. 282 — e, the reasons and conclusions of that Court, in its discussion of the common law rule, are most instructive. It is there said that, while the unauthorized selection of any substitute by an employee, entrusted with the operation of his employer's automobile is a wrong to the employer, even so, the employer is not, at common law, relieved of liability to the public for negligence assignable to the employee, who still remains in the car with general power and authority of supervision and control. The employee may be found negligent in placing at the wheel a substitute without skill or experience in the management of cars, or in failing to properly supervise the operation thereafter and intervene to avert the loss when intervention would avail. However, "it is not negligence towards the public if the substitute is competent, perhaps more competent than the servant, and there is no failure thereafter of fitting supervision." The employee can not be deemed negligent nor liability attach to the employer if a competent substitute is "inattentive or remiss at a time when intervention by the servant would have been of no avail. The act of negligence may be 'so sudden or unexpected' that there is no reason to foresee it nor opportunity to avert it." Judge Cardozo, in stating the opinion of the Court, says, "The basis of liability is always the negligence of the servant. If such negligence exists and is found to be an effective cause, it does not lose its significance as a basis of liability because it may be found to be combined with the negligence of the substitute." In holding that the defendant would be liable at common law, that judgment of the Court is based "upon the ground that the negligence of the servant, though it fused with the negligence of the substitute, may none the less be found to have been the cause of the collision."

In *Thyssen* v. *Ice & Storage Co.*, supra, that Court, referring to

the authorities supporting the broader rule of liability already noted, says:

"But, generally speaking, we think the rule of these authorities is not grounded upon the thought that one who assists a servant becomes thereby a servant of such servant's master, except it be in cases where we may find express or implied authority in the servant to employ or permit the assistance so rendered. In the absence of such authority, the one safe and logical ground upon which to rest the liability of a master for the negligence of a volunteer assistant of his servant is the negligence of the servant in inviting or permitting a stranger to perform or assist in the performance of the work which was intrusted to his own hand. Where such negligence is shown with injury proximately resulting therefrom to a third person, who is himself without fault, the master is liable under the familiar rule which imputes to him the negligence of the employee in the course of his employment."

In *Ricketts* v. *Thos. Tilling, Ltd.* (1915), 1 K. B., 644, the driver of a motor omnibus, sitting on the box, permitted the conductor, who was not authorized to drive and was inexperienced and incompetent, to operate the vehicle. Through the negligent driving of the conductor, the omnibus mounted the pavement and injured several pedestrians. Buckley, L. J., said:

"It seems to me that the driver, who was authorized to drive, had the duty to prevent another person from driving, or, if he allowed another person to drive, to see that he drove properly. He was sitting beside the conductor and the driving by the conductor was conducted in his presence. * * * It is a question for the jury whether the effective cause of the accident was that the driver committed a breach of his duty (which was either to prevent another person from driving or, if he allowed him to drive, to see that he drove properly, or whether the driver had discharged that duty."

Pickford, L. J., observes:

"It is admitted that the driver was sitting by the man who was driving and he could see all that was going on — he could

control what was going on. It seems to me that the fact that he allowed somebody else to drive does not divest him of the responsibility and duty he has towards his masters to see that the omnibus is carefully, and not negligently, driven. * * * Where a man is entrusted with the duty of driving and controlling the driving of a motor omnibus and is setting alongside a person who is wrongfully driving and the motor omnibus is negligently driven and thereby an accident happens, there is evidence at any rate of negligence on the part of that driver in having allowed that negligent driving. I do not at all say that on an investigation of the facts it might not appear that the act of negligence was so sudden and unexpected that he had no reason to see it; and therefore it would come back to the question of whether he was responsible for allowing the other man to drive."

Liability is here predicated solely on the negligence of the servant and subject to the limitations stated in *Grant* v. *Knepfer*, supra, which, in some measure, bases its conclusions upon this decision of the English Court.

In *Engelhart* v. *Farrant & Co.* (1897), 1 Q. B., 240, the same principle is affirmed, and it is there held that a master may be liable for the negligence of his servant whereby opportunity is given for a third person to commit a negligent act immediately producing the damage complained of, if the original negligence of the servant was an effective cause.

Our attention is called to *Butler* v. *Mechanics Iron Foundry Co.*, supra, as a case in direct conflict with the view affirmed in *Grant* v. *Knepfer*. A careful reading of the opinion of the Court, however, does not convince us that the case has that status. There, the defendant's truck driver was instructed "to have nobody ride on the trucks." He, however, permitted a licensed chauffeur to ride and to operate the car in his presence, through whose negligence the plaintiff was injured. The opinion expressly states that no negligence on the part of the driver is shown to have contributed to the accident, it being wholly the fault of the substitute, which could not have been prevented by the driver. The case seems to turn, however, upon the lack of the employee's authority to delegate his

duties to a substitute, and thereby create the relation of master and servant between the employer and the substitute. If this conception of the grounds on which this case is decided is correct and any significance may be attached to the express mention of the absence of negligence on the part of the servant, we are not convinced that the Massachusetts Court is as yet committed to a repudiation of the present New York and English common law rule.

Nor is it clear that other cases cited present the conflict of opinion attributed to them. Some have been challenged or distinguished. In *Ricketts* v. *Thos. Tilling, Ltd.*, supra, it is noted that the single question involved in *Gwilliam* v. *Twist* (1895), 2 Q. B., 84, was whether there was a necessity for the employment of an assistant from which liability could be imposed upon the master under the doctrine of implied authority, and it is also pointed out that in *Beard* v. *London General Omnibus Co.* (1900), 2 Q. B., 530, there was no proof that the employee was negligent or that he was present when the substitute caused the loss. *Armstrong* v. *Sellers*, 182 Ala., 582, is subject to the recent adoption in *Emison* v. *Wylam Ice Cream Co.*, supra, of the broad and unqualified theory of constructive identity. In *White* v. *Levi & Co.*, 137 Ga., 269, the case turns on the lack of authority, express or implied, for the employment of an assistant by a servant, but the absence of the servant, at the time the negligence occurred, is noted. *Clough* v. *Company*, 75 N. H., 84, does not seem to be in point. And *Board of Trade Bldg. Corp.* v. *Cralle*, supra, must be read in the light of *Ches. & O. R. Co.* v. *Swartz*, 115 Va., 723.

We are impressed with the reasons underlying the New York and English rule. That concept of the law seems more logical than the broad theory of constructive identity or the denial of any liability unless the person directly causing the injury stands in the relation of servant to the master. We are of opinion that at common law, which prevails in this state, the sound rule is that, while an employee can not create the relation of master and servant between his employer and an assistant who, without authority, he substitutes for himself in the employer's business, still, if the negligence of the employee in so engaging an assistant who was incompetent or in failing to supervise such an assistant, be he competent or in-

competent, is a proximate cause of the damage complained of, the employer, is liable although the assistant's negligence in the presence of the employee and in combination with his negligence contributed proximately to the accident.

Applying the foregoing rules to the record before us, we find no error in the ruling below. With the burden on the plaintiff to sustain his allegations of negligence by *prima facie* proof, upon a most favorable view of his evidence, he shows no authority in the defendant's driver to permit his friend Carpenter to operate the truck. Assent to Carpenter's driving can not be fairly inferred from the defendant's discovery of his presence when he passed it on the highway. Tancread was then driving and there was nothing to indicate that he would surrender the wheel. The trip was not so long nor the load so heavy as to require a second driver and no emergency is disclosed. No more is there proof of any general use of substitute drivers in the defendant's business which warrants an inference of his knowledge or consent to the employment of an assistant on this trip.

The evidence does not support the charge that Carpenter was an incompetent driver. No witness testifies as to his knowledge or experience with automobiles and we are not impressed with the view that a legitimate inference of incompetency can be drawn from the incidents of this accident. The cars met at night at or near a culvert where the road was fifteen feet wide. The rear end of the truck undoubtedly hit the left forward wheel of the plaintiff's car. The plaintiff's assertion that his car was at the right of the middle of the traveled part of the road warrants an inference that Carpenter was negligent and no more. A competent driver might well have been as remiss in his duty and brought the same misfortune to the plaintiff. Incompetency is a matter of conjecture.

Nor can the defendant's driver be deemed negligent because of his failure to supervise his assistant's operation of the car. There is nothing in the evidence to indicate that a collision was anticipated by either party. The course of the two cars or their relative positions on the highway just before the accident is not shown with any degree of certainty. The facts attending the collision, which do appear, are consistent with the sudden and unexpected

swerve of the truck or a like failure to turn it away from the plaintiff's car sufficiently to clear the rear end. There is no determining factor in the case which leads to a contrary conclusion. Under the rule, if the operator's act of negligence was so sudden or unexpected that the driver had no reason to foresee it nor opportunity to avert it, he can not be deemed negligent. Nor can liability attach to the employer.

For the reasons stated, upon the evidence introduced by the plaintiff, the presiding Justice properly ordered a nonsuit. His ruling must be sustained.

*Exceptions overruled.*