# MANUEL P. MEDEIROS, JR., *v.* HONOLULU MOTOR COACH COMPANY, LIMITED.

## No. 2360.

SUBMITTED OCTOBER 24, 1938.  DECIDED JANUARY 10, 1939.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE BROOKS
IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

The defendant Honolulu Motor Coach Company, Limited, is a public carrier of passengers and in that capacity operates motor coaches between Honolulu and Schofield. On August 31, 1936, shortly before midnight, it dispatched one of its thirty-passenger coaches fully loaded from Honolulu for Schofield in charge of one John Carvalho, one of its regularly employed drivers. Shortly after leaving Honolulu Carvalho permitted two of his friends, Henry Kaipo, Jr., and Fred Lewis, to board said coach as his guests for a ride to Schofield. They and one passenger occupied the front seat with the driver. These friends soon observed that Carvalho had been drinking and was feeling rather "high," whereupon Kaipo took the wheel.

The circumstances under which Kaipo took the wheel are related by both Kaipo and Lewis. Carvalho was not called as a witness. Their evidence is to the effect that they suggested to Carvalho that it would be best for him to let Kaipo drive and that he thereupon surrendered the wheel to Kaipo and took Kaipo's place on the front seat of the coach. Kaipo further testified that he was a licensed public chauffeur, that he was not an employee of defendant and that he himself had been drinking that evening and had drunk about five drinks of beer during the evening, the last one being about one hour before the accident hereinafter referred to.

While proceeding on their way toward Schofield with Kaipo at the wheel and Carvalho on the front seat with

him a Plymouth sedan, owned by plaintiff and used in his taxi business, passed the coach which Kaipo was driving somewhere between Oahu Prison and the bridge upon which the accident occurred. The road approaching the bridge is a three-lane road and narrows to two lanes on the bridge. The sedan, after passing the coach, fell in behind a slow-moving army tractor then crossing the bridge and either overtook and collided with the tractor and was suddenly stopped, whereupon the coach driven by Kaipo crashed into the rear of the sedan, or was first struck by the coach from the rear and hurled into the tractor. The evidence is conflicting as to whether the Plymouth first collided with the tractor or was first hit by the motor coach and hurled into the tractor by the impact but there is no conflict in the evidence as to the Plymouth sedan being badly damaged. The owner of the Plymouth sedan sued the Honolulu Motor Coach Company, Limited, for the damage to and loss of the use of his sedan, alleging negligent driving and operation of defendant's motor coach by John Carvalho, servant and agent of defendant.

At the trial before a jury and at the close of the evidence the defendant moved the court to instruct the jury to return a verdict for the defendant on the ground that it affirmatively appeared from the evidence that the driver of defendant's bus was not an employee of the Honolulu Motor Coach Company, Limited, and not operating within the scope of his employment. The court overruled the motion, stating that a consideration of the question of law involved would unduly delay submission of the case to the jury and suggested that in the event of a verdict in favor of the plaintiff the defendant could present the question of law on a motion for judgment notwithstanding the verdict. Counsel for the defendant agreed to the procedure suggested but it does not appear that counsel for the plaintiff made any response to the court's suggestion. The court thereupon

read the instructions to the jury. The defendant's first requested instruction was for a directed verdict in its favor, which the court refused and to which counsel for defendant excepted. Defendant's requested instruction No. 15, which was refused, reads as follows: "You are instructed, Gentlemen of the Jury, that if Plaintiff's taxi first collided with the tractor before being struck by the Honolulu Motor Coach bus, then Defendant could, under no circumstances, be responsible for that portion of the damage caused by that first collision regardless who was at fault." To the court's refusal to give the foregoing instruction defendant duly excepted.

The jury returned a verdict in favor of the plaintiff, to which counsel for the defendant noted an exception. Thereafter a motion for judgment notwithstanding the verdict was made, raising the same question of law set forth in his oral motion for a directed verdict, which was by the court denied and counsel for the defendant duly excepted. He then made a motion for a new trial based on the same ground, which was likewise denied and to which he duly excepted.

The case is here on defendant's bill of exceptions, which embodies all of the exceptions hereinabove referred to. The argument falls into two groups. All of the exceptions except the one to the court's refusal to give defendant's requested instruction No. 15 may be considered together as the same question of law is presented by each of them.

We will first consider the refusal of the court to give defendant's requested instruction No. 15. Other instructions given by the court having a bearing upon the issue raised by the evidence to the effect that the Plymouth sedan first collided with the slow-moving tractor and was the cause of the accident were defendant's requested instructions Nos. 8, 9, 10, 11 and 12. No. 8 is as follows: "You are instructed, Gentlemen of the Jury, that if you find from the

evidence that plaintiff's driver first collided with the tractor before being struck by the Honolulu Motor Coach bus under such circumstances as to render a collision by the Motor Coach bus unavoidable in the exercise of due care on the part of the Motor Coach driver, then plaintiff's driver was, as a matter of law, guilty of negligence which was a proximate cause of the accident, and you must bring in a verdict for the defendant, no matter whether you find defendant's driver to have been guilty of any negligence or not."

The other instructions requested by the defendant and given by the court left to the jury the question of whether or not the driver of the Plymouth sedan was guilty of contributory negligence and whether or not the accident which ensued was an unavoidable accident. Both of these issues must have been decided by the jury against the contention of the defendant. Defendant's requested instruction No. 15 is so worded as to assume that if the plaintiff's taxi first collided with the tractor damage ensued. In view of this fact, there being no evidence of damage by such collision if it occurred, and the fact that the jury must have found, under the instructions which the court gave at the defendant's request, that the taxi did not first collide with the tractor, we see no error in the court's refusal to give defendant's requested instruction No. 15.

The question of law raised by the exception to the denial of defendant's motion for a directed verdict and to the court's denial of the motion for judgment notwithstanding the verdict and the motion for a new trial is the old and often-discussed question of the liability of a master to third persons for injury occasioned by negligent operation of the master's instrumentality when his servant, without authority to do so, employs another to assist in or take over the performance of the acts entrusted by the master to his servant. The disposition of the foregoing question will also

dispose of defendant's contention that there is a fatal variance between the allegation and the proof.

No statutory modification of the common law on the first question has been called to our attention and we know of none. The question of liability of the defendant in this case must therefore be tested by the rule at common law. The task of making a clear statement of the rule is not without difficulty. Many authors of note as well as many eminent jurists have undertaken the task and unfortunately they are not in complete agreement. The precise question has not before been before this court. In 14 Am. & Eng. Encyc. of Law, p. 810, the rule was stated as follows: "Where a servant employs a third person to perform an act within the servant's employment, and injury results to another, the master is liable the same as though his servant employed no agent." In Wood, Master and Servant (2d ed.), § 308, the rule is thus stated: "If the servant employs another person to do his work or to assist him therein, the master is liable for an injury resulting from such person's acts." In Shearman & Redfield on the Law of Negligence (4th ed.), § 157, p. 263, it is said: "A question of some difficulty may arise, where a servant, without having any real or ostensible authority to do so, employs an assistant, by whose negligence, in the performance of work assigned to the former servant, a third person is injured. The master would not be bound by a contract made in his name by such a sub-agent, even though it were exactly such as he had authorized his own servant to make; and from this it might not unreasonably be inferred that he could not be made liable for the torts of one whose contracts would not bind him. On the other hand, there is a manifest inconvenience certain to ensue to the public at large from thus shifting the responsibility from masters, who, as a class, are able to meet it, and who receive the benefit of the service, upon servants, who, as a class, are entirely unable to compensate

for the injuries thus caused. Public policy, therefore, requires that masters should be held liable for the consequences in such cases; and so the courts have held them, although without laying down any general rule upon the subject."

Professor Mechem, who has criticized the foregoing statements of the rule on this subject, has, in his work on agency, formulated a very comprehensive statement of the rule as follows: "There may undoubtedly be cases in which the act in question is rightfully to be deemed to be the act of the servant, and therefore imposing liability upon the master, notwithstanding that the physical act of some third person, volunteering or requested to give aid to the servant, has actually intervened. Where the servant himself is actually in control, supplying the will and the motive, the act may be regarded as the act of the servant himself,—and if negligent, as his negligence,—even though the servant has exercised or permitted to be exercised, the physical act of a third person, instead of some other instrumentality or appliance which might otherwise have been available and permissible. Where the act which the servant thus causes or directs is in itself negligent, there could ordinarily be little doubt of the liability; but even where the fault lies rather in the manner in which the person so used has done the act, the liability may attach. The limits of this doctrine must be narrow; it can probably be applied only when the servant is actually directing and controlling the act, and so personally and immediately in charge that the act of the third person may fairly be regarded as the act of the servant. The main act itself must also, in any event, be an act within the scope of the servant's employment." 2 Mechem, Agency (2d ed.), § 1867, p. 1451.

In Restatement, Law, T. Agency, § 241, p. 542, in the preparation of which Professor Mechem took a leading part, the broad rule is stated thus: "A master who has

entrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant entrusts its custody to serve the purpose of the master, if the servant should realize that there is undue risk that such person will harm others by its management." In applying the foregoing general rule, the effect of the servant remaining in a position to control the instrumentality is stated by the institute as follows: "A servant, while remaining with the instrumentality, may surrender its immediate control to another, as where the driver of a truck permits a boy to drive it. Although such surrender is not negligent, the master remains subject to liability for any negligence of the employee in supervising the conduct of the other. However, in the absence of negligence by his servant, the master is not liable for any casual negligence of the other while under the supervision of the servant." (p. 544.)

Likewise many courts both in England and America have considered our precise problem with varying results. One of the oldest English cases is *Booth* v. *Mister,* 7 Car. & P. 66, decided in 1835 and often cited by American courts. In that case the declaration alleged that defendant's cart was so negligently driven by defendant's servant that it struck the vehicle in which plaintiff was riding, injuring him. It appeared from the evidence that defendant's servant, whose duty it was to have charge of the cart, was riding in the cart but that another who was not in defendant's service was driving with the servant's consent. It was urged that the allegation was not sustained by the evidence. Lord Abinger, in answer to this contention, said: "As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

Other English cases indicating the trend in those courts are *Engelhart* v. *Farrant & Co.,* 1 Q. B. (1897) 240, and

*Ricketts* v. *Tilling*, 1 K. B. (1915) 644. In *Engelhart* v. *Farrant, supra,* a delivery wagon was sent out with a man and a boy. The man's duty was to drive. The boy had nothing to do with the horses, it being his duty to deliver parcels. The master had instructed the man not to leave the cart. The man disobeyed his instructions and while he was absent the boy drove on and collided with plaintiff's vehicle and injured him. The court held that the negligence of the driver in leaving the cart in the custody of the boy might be found to be the effective cause of the collision, saying: "If a stranger interferes it does not follow that the defendant is liable; but equally it does not follow that because a stranger interferes the defendant is not liable if the negligence of a servant of his is an effective cause of the accident."

In *Ricketts* v. *Tilling, supra,* a motor omnibus owned by defendant had come to a terminus and discharged its passengers. The driver then gave up his seat to the conductor, who drove the omnibus, the driver being seated by his side, round certain streets so as to bring it in position for starting on its return journey. While so driven, owing to the negligent driving of the conductor, the omnibus mounted the foot pavement, knocked down a lamp post and several persons, killing one and injuring others. The plaintiff was one of the injured persons. At the trial, at the close of plaintiff's case, the court held that there was no evidence that the conductor had any authority from the defendant to drive the omnibus and accordingly entered judgment for defendant. On appeal this holding was reversed, the court saying: "It seems to me that the driver, who was authorized to drive, had the duty to prevent another person from driving, or, if he allowed another person to drive, to see that he drove properly. He was sitting beside the conductor and the driving by the conductor was conducted in his presence. He could not delegate his authority. It is a

question for the jury whether the effective cause of the accident was that the driver committed a breach of his duty (which was either to prevent another person from driving or, if he allowed him to drive, to see that he drove properly), or whether the driver had discharged that duty. The accident was due to the fact that the conductor was driving; when he was driving he met with some sudden contingency, the motor omnibus mounted the pavement, and the accident resulted. It is a question of fact for the jury what was the effective cause. Authorities have been referred to. Strong reliance has been placed on the case of *Beard* v. *London General Omnibus Co.* (1) Let me say what, in my opinion, that case decided. The facts were that the journey of the motor omnibus had come to an end, it had arrived at the terminus of the journey at Battersea Rise. The driver got off the box, leaving the omnibus at a place where there was a stand for two omnibuses, and went to get his dinner. The driving was for the time being altogether at an end, and, until he came back, the omnibus ought to have stopped where it was on the stand. The conductor, in that state of facts, drove the omnibus for the purpose of turning it round ready for the next journey and an accident resulted. Under those circumstances, what this Court held was that the plaintiff must produce some evidence to show that the conductor was a person authorized to drive, and it was held that the plaintiff had not discharged himself from the burden cast upon him of showing that the injury was due to the negligence of a servant of the defendants acting within the scope of his employment and that the conductor ought to have been shown to be a person who, under those circumstances, was authorized to do the act, and there was no evidence to that effect."

One of the oldest and most cited American cases dealing with our problem is *Althorf* v. *Wolfe*, 22 N. Y. 355. In that case one Fagan, defendant's servant, had been instructed

to remove the snow and ice from defendant's roof. He, without defendant's knowledge or consent, invited a friend, Cashan, to assist him. They threw the snow and ice into the street. A passerby was struck and killed. In an action for damages against the master one of the two opinions cited *Booth* v. *Mister, supra,* to sustain the liability of the master, saying: "The defendant does not and cannot deny but that he is responsible for the negligent and wrongful acts of Fagan. If it had been certain that it was that person, and not Cashan, who threw the piece of ice which killed the deceased, the defendant clearly would have been responsible. Instead of accomplishing the mischief in that manner, Fagan, by a negligent and improper act, enabled Cashan to do it. If we keep in mind that the defendant is responsible for the acts of Fagan, and that Fagan took his comrade on to the roof and thus enabled the latter to do the mischief, it is difficult to discover any principle which will shield the defendant from responsibility. It is not necessary to consider Cashan as the defendant's servant. He was, rather, the instrument by which Fagan, for whose conduct the defendant was undeniably responsible, did the wrong."

In *Hill* v. *Sheehan,* 20 N. Y. S. 529, decided in 1892, the principle announced in *Althorf* v. *Wolfe, supra,* was applied to a case where the defendant, a livery and boarding stable keeper, entrusted a horse belonging to a patron to his servant to be delivered to his patron with positive instructions not to permit anyone else to drive the horse. The servant disobeyed his instructions and permitted an acquaintance, one Kreuger, to drive the horse for delivery to the patron. Kreuger negligently drove the horse and plaintiff was thereby injured. Said the court: "It is insisted that Kreuger was in no sense defendant's servant, and consequently he cannot be made liable for his acts. This overlooks the fact that by the act of the servant who was in

charge, an instrument, *i.e.*, Kreuger, was used for the prosecution of the master's business, and that such instrument inflicted the injury. It is not essential, under such circumstances, that the relation of master and servant should exist, in order to fasten responsibility. It is sufficient when it appears that the master's business is being prosecuted by the instrument used."

One of the late New York cases called to our attention is *Grant* v. *Knepper*, 245 N. Y. (1927) 158, in which Chief Judge Cardozo carefully reviewed some of the English and many of the American cases and said: "Defendant sent out his motor truck with a driver and a salesman to deliver merchandise. On the way back the salesman asked to be allowed to run the car, though he was without an operator's license. Permission being granted, he slipped into the seat behind the wheel while the driver stood upon the running board beside. After going about a mile and a half, the salesman ran the truck into a car which had been parked along the roadway. The truck, after striking and damaging the car, went on about forty feet till it collided with a telephone pole, which it threw to the ground. The owner of the car sues the owner of the truck. (1) We think a case was made for submission to the jury, though liability were to be tested by the rule at common law. The driver was negligent, or so the triers of the facts might find, when he placed at the wheel a substitute without skill or experience in the management of cars. The substitute did not even have such presumptive evidence of competence as may be supplied by an operator's license (*Pigeon* v. *Mass. N. E. Ry. Co.*, 230 Mass. 392, 395; *Bourne* v. *Whitman*, 209 Mass. 155, 171), and his lack of skill is apparent in the very nature of the accident. The driver was negligent again, or so the triers of the facts might find, in failing to supervise or control the conduct of his substitute, who ran the car at a rate of speed presumptively excessive in the operation of

a truck (Highway Law; Cons. Laws, ch. 25, §§ 287, 288; cf. Yonkers Code of Ordinances, art. IV, § 67, as amended by General Ordinance No. 4 of Oct. 15, 1916). We do not ignore the fact that the substitution was itself unauthorized, and so a wrong to the employer. Even so, the employer was not relieved of liability for any negligence assignable to the driver, his authorized representative, who still remained upon the truck with general power and authority of supervision and control (cf. *Lloyd* v. *Grace, Smith & Co.,* 1912 A. C. 716, quoting *Barwick* v. *Eng. Joint Stock Bank,* L. R. 2 Ex. 259). If the driver had left the seat and let the car proceed without any one at the wheel, the defendant would have been liable for any damage caused thereby. He is not less liable when the driver places at the wheel an incompetent substitute (Pollock on Torts, p. 87), or fails to intervene thereafter with protest or command when protest or command would be timely to avert the loss (*Dowler* v. *Johnson,* 225 N. Y. 39). 'Co-operation may be inferred from acquiescence where there is power to restrain' (*Dowler* v. *Johnson, supra*). The duty rests upon the servant with continuing obligation to 'keep control and exclude incompetent meddling' (Pollock, *supra*) while he remains upon the car."

In *Copp* v. *Paradis,* 130 Me. 464, 157 Atl. 228, in which *Ricketts* v. *Tilling, supra; Engelhart* v. *Farrant & Co., supra,* and *Grant* v. *Knepper, supra,* are cited with approval, a very clear statement of the common law rule is found, the court saying: "We are impressed with the reasons underlying the New York and English rule. That concept of the law seems more logical than the broad theory of constructive identity or the denial of any liability unless the person directly causing the injury stands in the relation of servant to the master. We are of opinion that at common law, which prevails in this state, the sound rule is that, while an employee can not create the relation of master and

servant between his employer and an assistant who, without authority, he substitutes for himself in the employer's business, still, if the negligence of the employee in so engaging an assistant who was incompetent or in failing to supervise such an assistant, be he competent or incompetent, is a proximate cause of the damage complained of, the employer, is liable although the assistant's negligence in the presence of the employee and in combination with his negligence contributed proximately to the accident."

*Conway* v. *Pickering,* 111 N. J. L. 15, 166 Atl. 76, was an action for damages for personal injuries suffered by plaintiff when struck by an automobile owned by the Courier-Post Company, one of the defendants, the operation of which the owner had entrusted to the defendant Pickering. The other defendant was one Wiegand whom Pickering procured to accompany him and drive the car because he, Pickering, had broken his glasses. While Wiegand was driving with Pickering on the seat beside him he proceeded, without protest from Pickering, against the traffic light and while so proceeding ran down plaintiff who was crossing the street. The court granted a nonsuit as to the Courier-Post Company and plaintiff appealed. The appellate court, on the authority of *Grant* v. *Knepper, supra,* held that the nonsuit was wrong, the evidence not being sufficient to justify withdrawing from the jury the question of the negligence of the Courier-Post Company's servant, Pickering, the court saying: "From the statement of facts already given it appears that the chauffeur, who, of course, was the servant of the Courier-Post Company, was in position to observe the movement of the car and its handling by the substituted driver. That being true he was not absolved from the duty to exercise care to see that its operation was with due and reasonable care. Conceding, for the purposes of the case, that the employer of Pickering was not responsible for the unauthorized employment of

Wiegand or for the acts of Wiegand so employed, it was responsible for the acts and omissions of Pickering whom it had placed in charge of the car and who was expected to operate it or to see that it was operated carefully while he was on it, and the law in such cases, we think, is stated with accuracy by Chief Justice Cardozo in the similar case of *Grant* v. *Knepper,* 245 *N. Y.* 158, when he says, 'the duty rests upon the servant with continuing obligation to keep control and exclude incompetent meddling while he remains upon the car,' and we might add incompetent or careless handling, and consequently that 'the driver was negligent * * * or so the triers of the facts might find, in failing to supervise or control the conduct of his substitute who ran the car at a rate of speed presumptively excessive in the operation of a truck.' "

A detailed review of all the authorities cited would unduly extend this opinion. We have carefully considered the reasoning of all the cases cited or coming to our attention. Many of them support the rule so clearly announced by Chief Judge Cardozo in *Grant* v. *Knepper, supra,* and approved in *Copp* v. *Paradis, supra,* and *Conway* v. *Pickering, supra.* Some of the additional cases supporting that rule are: *McAdon* v. *Times Pub. Co.,* 272 S. W. (Tex.) 814; *Thyssen* v. *Ice and Storage Co.,* 134 Iowa 749, 112 N. W. 177; *Vorbeck* v. *Patten-Davies Lumber Co.,* 67 Cal. App. 475, 227 Pac. 929; *City of Indianapolis* v. *Lee,* 76 Ind. App. 506, 132 N. E. 605.

A much broader basis of liability of a master for negligence of a substitute employed by his servant without express or implied authority is announced in some cases, notably the following: *Emison* v. *Wylam Ice Cream Co.,* 215 Ala. 504, 111 So. 216; *Hendler Creamery Co.* v. *Miller,* 153 Md. 264, 138 Atl. 1; *Geiss* v. *Twin City Taxicab Co.,* 120 Minn. 368, 45 L. R. A. (N. S.) 382, 139 N. W. 611. These cases seem to hold that neither negligence in the selection

of the substitute nor in failing to supervise or control the acts of the substitute need be found to make the master liable. Other cases, notably *Butler* v. *Mechanics Iron Foundry Co.,* 259 Mass. 560, 156 N. E. 720, 54 A. L. R. 849, seem to hold that the relation of master and servant must be found to exist between the defendant and the substitute employed by defendant's servant in order to impute to the defendant the negligence of the substitute and that negligence of the servant in making the employment or in failing to supervise cannot be made the basis of liability.

The question under discussion is one of first impression in this jurisdiction. Many courts in other jurisdictions have considered the question with varying results although we find less conflict in the basic principles underlying the decisions than in their application to the facts. From a very careful study of the authorities we are convinced that the rule stated by Chief Judge Cardozo in *Grant* v. *Knepper, supra,* sets forth the correct rule and that it is supported by the views of Professor Mechem, the Restatement of the Law, the English cases herein referred to, many earlier American cases and approved by the later cases referred to above.

Applying the principles which we have found to express the correct rule to the facts of this case we hold that the defendant was not entitled to a directed verdict for the reason that the evidence was sufficient to require submission to the jury the question of whether or not the defendant's servant, Carvalho, was guilty of negligence in permitting Kaipo to drive or in failing to so supervise his driving as to avoid the collision which ensued and whether or not such negligence, if found, was the proximate cause of the accident. These were questions of fact for the jury under proper instructions. Had the defendant taken this view of the law and submitted to the court proper instructions on this theory, if refused, the court's refusal to give

them would have been error. But no such instructions were requested. Mere nondirection on matters of law is not ground of error where specific instructions have not been requested. (*Nawelo* v. *von Hamm-Young Co.,* 21 Haw. 644; *Sylva* v. *Wailuku Sugar Co.,* 19 Haw. 602; *Territory* v. *Furomori,* 20 Haw. 344.)

It follows from what we have said that the liability of the defendant must be based on negligence of its servant, Carvalho. The allegation of negligent driving and operation of defendant's motor coach.by John Carvalho, servant and agent of defendant, is consistent with the theory of liability which we have adopted. The questions of negligence on the part of defendant's driver, which proximately caused the accident, were submitted to the jury by instructions requested by defendant. Had the defendant seen fit to have the jury more fully instructed as to whose negligence could be attributed to it the jury would have been justified, under the evidence before it, in finding that Carvalho, for whose negligence defendant is admittedly chargeable, was negligent in permitting Kaipo to drive, notwithstanding the fact that the undisputed evidence is that he was a licensed public chauffeur. He, Kaipo, admitted that he had been drinking that evening. That alone would have prevented this court from rejecting a finding of negligence on the part of Carvalho in permitting him to drive. Likewise the jury would have been justified, under the evidence, in finding that Carvalho was negligent in failing to supervise the driving of Kaipo. There was evidence that the motor coach which Kaipo was driving had been, for a considerable distance, following plaintiff's Plymouth sedan and it is undisputed that there. was a slow-moving tractor crossing the bridge upon which the accident occurred which was seen by at least one occupant of the motor coach. Kaipo admits that he did not see the tractor and didn't know of its presence until after the accident. He was, or at least

the jury could have concluded that he was, driving too close to plaintiff's sedan to enable him to stop in the event of an emergency and that Carvalho's failure to warn him of this danger was negligence on the part of Carvalho as well as negligence on the part of Kaipo and was a proximate cause of the damage complained of.

As has been so well-stated by the supreme court of Maine in *Copp* v. *Paradis, supra,* while an employee cannot create the relation of master and servant between his employer and an assistant who, without authority, he substitutes for himself in the employer's business, still, if the negligence of the employee in so engaging an assistant who was incompetent or in failing to supervise such an assistant, be he competent or incompetent, is a proximate cause of the damage complained of, the employer is liable, although the assistant's negligence in the presence of the employee and in combination with his negligence contributed proximately to the accident.

We do not find it necessary to pass upon the question raised by counsel for plaintiff to the effect that the territorial courts are without jurisdiction to grant motions for judgment *non obstante verdicto* for the reason that all of the issues argued, which are presented by the exception to the denial of that motion, are also presented by other exceptions.

For the reasons herein set forth the other exceptions must be and are hereby overruled.

*Smith, Wild, Beebe & Cades* for defendant.

*E. J. Botts* for plaintiff.