EDNA STEVENS *vs*. PERLEY E. FROST.

Androscoggin.   Opinion, May 4, 1943.

*Berman & Berman,* of Lewiston for the plaintiff.

*Robinson & Richardson,*

*John D. Leddy,*

*Clifford & Clifford,*

*Frank T. Powers,* for the defendant.

SITTING: STURGIS, C. J. THAXTER, HUDSON, MANSER, MUR-
CHIE, CHAPMAN, JJ.

CHAPMAN, J. The plaintiff claimed to have been injured by
the negligence of an employee of the defendant. At the close
of the plaintiff's presentation of evidence the defendant rested
and moved for a directed verdict in his favor on the ground
that the evidence presented would not justify a finding that the

acts, negligent performance of which is complained of, were in the course of the employee's employment. The presiding Justice granted the motion and the plaintiff excepted. There is no other issue before this Court.

Whether an employee is acting in the scope of his employment may be a question of fact for a jury or a question of law for the Court. Whether there is evidence to justify triers of facts to so find is for the Court, and if there be no such evidence, it is the duty of the Court to direct a verdict. 39 C. J., Master and Servant, Sec. 1593; *Zampella* v. *Fitzhenry*, 97 N. J. L., 517, 117 A., 711, 24 A. L. R., 666. This is but an application of the principle that, if only one conclusion is justified, the Court will direct the jury to that conclusion. *Heath* v. *Jaquith*, 68 Me., 433; *Burnham et al.* v. *Hecker*, 139 Me., 327; 30 A. (2d), 801.

The plaintiff was a young woman, friendly with one Chester Frost. They went about more or less together. Frost's father, the defendant, was the proprietor of a garage engaged in repairing, buying and selling automobiles. The son was employed in the garage in a more or less general capacity and, during his father's absence from the garage, was in charge thereof. In addition to this work he was a salesman and had authority to use one of the cars of the garage whenever it was necessary to his employment. As salesman it was within the course of his employment to seek the names of prospective buyers, to contact them and make sales. He did not restrict this work to business hours, but was accustomed to mix business with pleasure and to obtain any available information and to secure customers whenever opportunity offered.

He met, through the plaintiff, a young couple, Mr. and Mrs. Brown, and the four became friendly and were more or less in each other's company. He testified that he learned that Mrs. Brown knew of a person who was interested in the purchase of an automobile and that, for the purpose of ascertaining the name of that person, he asked the plaintiff to arrange a party

4

at the Browns'. The plaintiff arranged the party, as requested, and Frost purchased and took to the Browns' a spaghetti dinner. The party consisted of the plaintiff, himself and Mr. and Mrs. Brown. The plaintiff was conveyed to the party by young Frost in the automobile of the defendant, which he used in his employment. On direct examination young Frost testified that he obtained the name of the prospect at the party. On cross examination he testified that he did not obtain this name. He also stated that there was talk relative to Brown purchasing a car. After dinner the two couples played cards till some time after midnight, at which time he took the plaintiff to her home in the automobile. Arrived at her residence, the plaintiff alighted and when the car was started by Frost it skidded, struck her and inflicted the injuries complained of.

The plaintiff claimed that her injuries were received by reason of the negligent operation of the car and invokes the principle that the employer is responsible for the negligence of the employee, acting in the course of his employment.

This principle is of such general acceptance that only passing affirmation is necessary. 39 C. J., Master and Servant, Sec. 1446; *Pollard* v. *M. C. R. R. Co.*, 87 Me., 51; 32 A. 735; *Copp* v. *Paradis*, 130 Me., 464, 157 A., 228. The adjudicated cases have dealt with the applicability of the rule. This is the issue in the instant case.

For the plaintiff it is claimed that there is evidence to justify the finding that young Frost caused the party to be held, partly for the purpose of furthering the business in which he was employed by the defendant, namely, to secure the name of the prospective buyer, and that, at the party, he devoted some attention to business and that, inasmuch as he induced the plaintiff to arrange the party and to be present thereat, an essential part of the program was to transport her to the party and to her home when the party was at an end; and the conclusion is drawn that, in so doing, he was acting in the course of his employment.

To reach the conclusion that he was acting in the course of his employment in transporting the plaintiff to her home, it must appear that he had authority to so transport her. "The authority of an agent is the very essence and *sine qua non* of the relationship." 2 Am. Jur., Agency, Sec. 85; *Copp* v. *Paradis*, supra; *Mechanic's Bank* v. *Bank of Columbia*, 5 Wheat., 336, 337, 5 Law Ed., 100. In that case the Court said:

"But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts,

1. That the act was done in the exercise, and,
2. Within the limits of the powers delegated."

In *Morris* v. *Brown*, 111 N. Y., 318, 327, 18 N. E. 722, 725, 7 Am. St. Rep., 751, the Court said:

"It is a general proposition that a master is chargeable with the conduct of his servant, only when he acts in the execution of the authority given him."

It is to be borne in mind that the issue before us is not merely whether young Frost was upon his employer's business at the Browns' and, consequently, so acting in driving therefrom. It is true that one who is furnished a car by his employer in which to go to and return from the place where he performs a service for his employer, is still in the course of his employment on his return, and the employer is generally responsible for his negligence during this time. But he is not so responsible to one who is riding in the car at the invitation of the employee if the employee is without authority to transport such person. Mechem on Agency, Sec. 1913; *Driscoll* v. *Scanlon*, 165 Mass., 348, 43 N. E. 100, 52 Am. St. Rep. 523. In that case the Court, commenting on the difference in the relationship between the defendant and a person unauthorized to ride, and between the defendant and a person on the street, said:

"The plaintiff does not stand in the same position as if he had been run over while crossing the road."

It follows that the driver of the Frost car might have been within the scope of his employment at the Browns' and also while driving therefrom, by reason of which the defendant would have been liable for the driver's negligence toward a person whom he met on the highway and, yet, not responsible to the plaintiff riding in the car. *Murphy* v. *Barry*, 264 Mass., 557; 163 N. E. 159; *Bilow* v. *Kaplan*, 164 A., 694, 11 N. J. Misc. 108; *Raible* v. *Hygienic Ice & Refrigerating Co.*, 119 N. Y. S., 138; 134 App. Div. 705; *Wilkinson* v. *Moore & P. Coal Co.*, 79 N. H., 335, 109 A. 45. In the latter case the Court said:

"As the driver had no authority in fact or in law to invite the plaintiff to ride because doing so was not within the scope of his employment, his invitation, if given, was not the invitation of the defendants."

In each of these cases the employee was driving a motor vehicle on the business of his employer and invited the person injured to ride for the purpose of assisting him in the work which he was performing for the employer, and in each case the Court held that the employee did not have authority to employ an assistant and make his employer responsible for negligence to the assistant. Mr. Mechem well says:

"As a general rule, however, it is entirely clear that one agent or servant has, from his mere position as such, no implied authority whatever to employ other agents or servants on his principal's account. What servants or agents the principal shall have (for and *to whom he is to assume responsibility*), how and when they shall be selected, upon what terms and subject to what conditions, limitations or control they shall operate, and the like, are questions of the greatest importance, which the principal

must ordinarily have the right to determine for himself. Unless it can be shown, therefore, that the principal has expressly or by proper implication given the authority to someone else, it must be deemed to reside in him alone." Mechem on Agency, Sec. 1042. (The italicising is ours.)

Adhering to these general principles, does the record justify a finding that the employee was acting within the scope of his authority? We think not. The burden of proof is upon the plaintiff to prove the agency and the scope thereof. It cannot be presumed. 3 C. J. S., Agency, Sec. 315; *Stratton* v. *Todd*, 82 Me., 149, 151; 19 A. 111; *Castner* v. *Richardson*, 18 Col., 496, 33 P. 163; *Schmidt* v. *Shaver*, 196 Ill., 108, 63 N. E., 655, 89 Am. St. Rep. 250; *American Car & Foundry Co.* v. *Alexandria Water Co.*, 221 Pa. State, 529; 70 A. 867, 15 Ann. Cas. 641, 128 Am. St. Rep. 749; *Blacher* v. *National Bank of Baltimore*, 151 Md., 514, 135 A. 383; 49 A. L. R., 1366.

Authority of an agent may be ostensible or actual. Ostensible authority is that which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. There is nothing in the record that requires our inquiry in this respect.

Actual authority may be either express or implied. Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred. 2 C. J. S., Agency, Sec. 97. There is little, if any, testimony of express authority in the record. The employer was questioned directly as to the authority of the employee and allowed to answer. He testified as follows:

"Q. Did or not Chester Frost have your authority to obtain customers at social functions?

"A. Yes, sir.

"Q. Did he or not have your authority to obtain customers at where *he may be visiting at dinner or supper or any place where he might be socially?* (Italicising is ours.)

"A. Yes, sir.

"Q. Did he have your authority to get leads which would introduce him to customers?

"A. Certainly.

"Q. In the evening as well as the day time?

"A. Yes.

"Q. Now, did you know on this day that Mr. Frost, that Chester was going to visit the Brown home that evening?

"A. No, I don't know as I did, in particular.

"Q. And did he—would he or not have your general authority to interview and solicit a prospect, or get a lead?

"A. Why, not in particular. I wouldn't—I say no, he didn't have to have my authority.

"Q. Didn't have to have your specific authority?

"A. No, sir.

"Q. That would come under his general — ?

"A. Yes, general."

These inquiries called for a conclusion, a statement of the witness' opinion and the answer would naturally be predicated not only upon directions given in express terms by the employer to the employee, but also upon inferences drawn from the circumstances connected with the relationship. In other words, the answers were statements of his opinion of the employee's authority, both express and implied. Such testimony is incompetent, whether it comes from a third party, the employer or the employee. A witness is limited to a statement of directions given and of facts and circumstances from which inferences may be drawn by the jury if the evidence is sufficient to raise an issue. *Short Mountain Coal Co.* v. *Hardy*, 114

Mass., 197, 213; *Rice* v. *James*, 193 Mass., 458, 461, 79 N. E. 807; *Farrell* v. *United States*, 110 Fed., 942; *McCornick* v. *Mining & Milling Co.*, 23 Utah, 71, 63 P., 820; *Wilhoit* v. *Iverson Tool Co.*, 119 S. W. (2d), 709 (Tex. Civ. App.).

However, if we disregard the incompetency of this testimony and receive it as a statement of express authority, it does not justify a finding that there was express authority to do the acts in question. It does not refer to furnishing of entertainment, to transportation of others in the automobile or to the employment of an assistant.

Some of the questions asked of Chester Frost, the employee, called for an expression of opinion, but he testified principally as to the nature of his work and what he was accustomed to do, all of which is proper evidence upon which to determine his implied authority. He testified to no express direction. After testifying as to his work in the garage and to the fact that, in the absence of his father, he was in full charge thereof, he was questioned as to his duties as a salesman and testified as follows:

"Q. Now, as a salesman, what were your duties as a salesman?

"A. Well, I contacted leads, if I had any. Sometimes I would call on the phone. I would get names, if possible, and go out and contact them.

"Q. And whether or not it was a part of your duties to go follow up these leads, or would you turn the name over to some other salesman, or how did you do that?

"A. Well, if I was busy in the office and one of the salesmen knew them I would have him contact them. If not, either I or my father would go to see them."

At another point:

"Q. Who directed the salesmen what to do? Who supervised them?

"A. Well, we usually talk it over together and try to put it over until my father came in."

Implied authority is actual authority circumstantially proven from the facts and circumstances attending the transaction in question and includes such incidental authority as is necessary, usual and proper as a means of effectuating the purpose of the employment, and this is so whether an agency is general or special. 21 R. C. L., 853.

In *Pollard* v. *Me. C. R. R. Co.*, supra, it was said:

"The nature of Howard's (employee) "employment, the character of the service required, the character of the act done, the circumstances under which it was done, and the ends and purposes to be attained and all material considerations, constituted the real test of liability."

The plaintiff's counsel advances the contention that the employee had "broad, unlimited powers and authority to do whatever he thought best, to obtain leads, prospects and customers directly or by social contacts." We cannot extend to him such a scope of authority. It is true that, in the routine work of the garage, he was a general "all around man," and, in the absence of his father, had charge — was "manager," although it was not stated whether the absence of the father was a matter of days, hours or minutes. But, even so, it could not be inferred that a man left in temporary charge of the garage would have authority to provide entertainment for prospective customers. Moreover, as a salesman, he was limited in authority, as appears from his testimony above quoted.

Both the father and the son, employer and employee, respectively, were closely questioned as to the employee's "duties" and "authority" as a salesman, and they were allowed to give their conception thereof; and, although there is nothing in the record to indicate that they would conceal anything that was of advantage to the plaintiff, neither of them went further than to state that he was authorized to get leads,

make contacts and obtain customers at social functions at which he might be present. Such is far short of authority to provide the social functions and entertainment.

An employee has implied authority such as is usual, customary and necessary. 21 R. C. L., 853; *Reifsnyder* v. *Dougherty*, 301 Pa. St., 328, 152 A. 98; *Chesapeake & O. Ry. Co.* v. *Ringstaff*, 67 Fed. (2d), 482. No evidence of custom or usage was offered to justify the authority claimed for the employee, nor was the trial Court's attention called to any custom or usage so generally known that judicial notice may be taken thereof, nor do we know of any such usage or custom.

If there had been other instances when the employee had furnished entertainment to prospects, or as a means of furthering the business interests in which he was employed, it would be a step toward proof of authority so to do. *Copp* v. *Paradis*, supra. But the record discloses no such instances; neither is there evidence that he had an expense account to which he might charge the cost of such entertainment, nor does it appear that the supper at the Browns' was paid for by the employer.

The principle that an agent or employee has implied autority to do what is proper and necessary is not helpful to establish authority of the employee in the instant case. It is not sufficient that the act of the agent or employee is advantageous to, or convenient for, his principal, or even effectual in transacting the business in which he is engaged. 2 Am. Jur., Agency, Sec. 87. It may well be that, on occasion, the entertainment of customers may be advantageous, but the same may be said of many things that a salesman might do. The language of the Court in *United States Bedding Co.* v. *Andre*, 105 Ark., 111, 150 S. W. 413, 414, 41 L. R. A. N. S. 1019, is applicable:

"In order to solicit orders for or to make sales of goods, it is not indispensable that the travelling salesman shall advertise them in a newspaper or upon bill boards. Such

advertisements may be advantageous to the principal or to those buying from him; but a great many other expensive things might be done which would prove advantageous to the principal and such buyers, and yet none of them can be considered indispensable for the purpose of making a sale, and it is not ordinarily understood to be incidental to the authority given to a travelling salesman."

See also: *Tarpy* v. *Bernheimer*, 16 N. Y. S., 870; N. *Friedman & Sons* v. *Kelly*, 126 Mo. App., 279, 102 S. W. 1066.

So far as the record contains evidence, Chester Frost was a salesman accustomed, with the approval of his employer, to obtain leads, contact prospects and obtain customers at any and all times and at any and all places where he might be present. His implied authority cannot be extended to the acts in question.

If we direct our inquiry as to whether, in the particular instance, it was reasonably necessary for his work to provide a supper and to request his friend to arrange a dinner and accompany him there, and for him to transport her to and from the party, the answer must be emphatically in the negative. He was a friend of the Browns, and he had learned that Mrs. Brown knew the name of a prospective buyer of a car. It is inconceivable that, under the circumstances existing, he could not have obtained the name upon simple inquiry by phone or otherwise. It is equally inconceivable that he needed a party to provide an approach to his friend Brown as a prospective customer.

His own testimony as to what attention he gave to business at the party is not convincing that the party was necessary to his employer's interests. Questioned relative thereto he testified as follows:

"Q. And did you attempt to, that evening, talk with Mr. Brown and persuade him to exchange automobiles?

"A. Well, I mentioned the fact to him and asked him if he was in the market to trade.

"Q. You did not finally induce him to trade, did you?

"A. No."

It also is significant in this respect that, as to obtaining from Mrs. Brown the name of the prospective customer, he testified on direct testimony that he obtained the name; and on cross examination testified that he did not obtain the name.

Although it was within the scope of his employment to obtain the name of a prospect and to contact a possible customer, he was not authorized to employ a means of doing so that was unnecessary and involved additional risks, when the purpose could be achieved by the usual methods. That it did involve additional risks is evident from the present case. The supper was clearly superfluous so far as the interests of the employer were concerned.

Plaintiff's counsel have cited cases, mainly from other jurisdictions, dealing with situations in some respects similar to that of the instant case. To adopt a precedent as controlling we must be convinced that it is founded upon correct principles, but we think that all of the cases cited are distinguishable from the instant case. *Good* v. *Berrie*, 123 Me., 266, 122 A. 630, is not in point sufficiently to be controlling. The instant case involves issues vital to its determination that do not appear in the cited case. That case involved the question of deviation by the driver from his master's business. It was held that the evidence justified the finding that the driver, at the time of the collision and injuries to a person whom he met upon the road, had returned to his master's business. There was involved no question of entertaining of prospective customers nor of the responsibility of the employer to a person riding in the car at the invitation of the employee.

As to the cases cited, to the effect that an employee may be in the course of his employment while also acting for his own in-

terests, we accept that principle without question, and it applies whether the employee's interest is in the nature of business or pleasure. The principle is too well established to require citation of authority.

The case of *Raduenz* v. *Kelly*, 295 Ill. App. 622, 14 N. E. (2d) , 509, is of no assistance to the plaintiff. There, the employee, engaged in selling cars of the employer, was on his way to the garage in the employer's car to change for another car to use in demonstration, and collided with plaintiff's automobile.

In the case of *Wilhoit* v. *Iverson Tool Co.*, supra, the driver of the defendant's car was employed as a salesman of supplies to oil producing companies. One of his duties was to cultivate the acquaintance and friendship of men engaged in the oil producing business and he was provided with an expense account for this purpose. He entertained business prospects and his accounts of expenses therefore were regularly rendered to his employer and allowed. He collided with the plaintiff's car while driving the car provided for him by his company. The case did not involve the question of injuries to one riding with the employee.

The case of *Bentley* v. *Oldetyme Distillers*, 71 N. D. 52, 298 N. W., 417, involved injuries to the plaintiff while riding with the employee of the defendant company. The employee, Gannon by name, was stated by the Court, in its summation of the facts, to be the sole contact man for the defendant in promoting its business in the State of North Dakota. He was not a salesman. The defendant was a wholesale distributor of certain brands of whiskey, and Gannon had broad powers to do anything and everything his judgment determined was necessary to promote good will toward the products of the defendant. He could invite a bar-tender to dinner and take him out. It was a part of his business to attend openings of saloons for the purpose of ingratiating himself with the saloon keepers and the bar-tenders. As to when Gannon should

attend such openings, how he should go, how he should handle the situation, were all left to his judgment and discretion. The plaintiff was a bar-maid and Gannon took her in his automobile to attend the opening of a saloon and to act as hostess thereat. We do not consider that the case is sufficiently similar to the instant case to be authority for the plaintiff's contentions.

In *Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal. (2d), 480, 55 P. (2d), 870, according to the statement of facts by the Court in its opinion, the driver of the defendant's car, Ewing by name, was the district manager of the company. The defendant corporation was a cotton-gin operator and the plaintiff a large grower of cotton. Ewing's duties were to solicit business from the farmers, settle accounts, arrange budgets and other details in connection with the loans, and advise and counsel as to the production and sale of cotton. He also did a certain amount of contact and public relationship work as between his company and the farmers, creating and maintaining a friendly relationship between the company and the community. It was a part of his duty to see that the growers who were financed by his company, among whom was the plaintiff, attended a meeting of an agricultural association which was held for purposes in which both the plaintiff and defendant were interested. After the meeting Ewing offered to take the plaintiff to his home and the plaintiff accepted, saying that he wished to talk over business matters with him. Such matters were under discussion during the journey, which was interrupted by the accident which caused the injuries to the plaintiff.

In each of the cases cited there was evidence which would justify a finding by a jury of authority in the employee. In the instant case we find that the evidence as to the authority of the employee was not such that a jury would be justified in finding that he was acting in the course of his employment in transporting the plaintiff to her home.

The presiding Justice was correct in the granting of the motion for a directed verdict.

*Exceptions overruled.*